**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Patricia Black, Ashley Platt, | : | Civil Action No. |
| Shawn Danielson, | : | |
|     Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| New England Computer Services, Inc. | : | |
| and Chris Anatra | : | |
|     Defendants. | : | December 21, 2018 |

**COMPLAINT**

## I.  INTRODUCTION

1.      Employers have a duty to pay female employees the same as male employees when they are performing "substantially equal" work. *EEOC v. Port Auth. of New York & New Jersey,* 768 F.3d 247,255 (2d Cir. 2014); Equal Pay Act, 29 U.S.C. § 206(d); Connecticut Equal Pay Act, C.G.S. § 31-75 *et. seq.;* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.;* Connecticut Fair Employment Practices Act, C.G.S. §46a-60(b)(1) *et. seq.* Employers have a duty to speak the truth about their employees and may not make knowingly false statements that cause them harm. Finally, employers have a duty to allow employees to employees to make good-faith complaints of discrimination and may not retaliate against them when they do.  42 U.S.C. § 2000e *et. seq.;* C.G.S. §46a-60(b)(4) *et. seq.*; 29 U.S.C. § 215 *et. seq.* These rules protects workers from discrimination, retaliation and defamation and the harm that these illegal acts cause to employees and their families.

2.      Here Defendants New England Computer Service, Inc. (NECS) and its president employed Plaintiffs Black, Platt and Danielson, three female Tech Support workers in its Branford location. Defendants paid Plaintiffs between $17,000 to $25,000 per year in salary and lost benefits less than Christopher Londa, a male tech support employee who worked alongside of them, in the same location, performing the same services. Defendant Anatra falsely accused the Plaintiffs of lying when they complained that Londa was making more money than they were, despite the fact that his own records proved this to be true and retaliated against Danielson by firing her after she filed a discrimination complaint with the Commission on Human Rights and Opportunities.

3.      Defendants conduct in underpaying Plaintiffs violates state and federal anti-discrimination laws, defaming the Plaintiffs and retaliating against Danielson has caused them and continues to cause them substantial financial harm as well as non-economic damages, reputational damages, attorneys' fees and court costs.

II.    **PARTIES**

4.      Defendant New England Computer Services, Inc. d/b/a NECS, Inc. (hereinafter "NECS") is a Connecticut corporation located at 322 East Main Street, 3rd Floor, Branford, Connecticut 06405.

5.      Defendant NECS is a software company that creates software for the food service industry. NECS produces a software line that is used by over 1,500 food service distributors.

6.      Defendant NECS is an employer as defined by Conn. Gen. Stat. § 46a-51(10) and 42 U.S.C. § 2000e(b). NECS employs over fifteen employees.

7.      Defendant Chris Anatra is the owner, agent and President of NECS.

2

Anatra is a resident of Guilford, Connecticut.

8.      Defendant Anatra possesses the ultimate authority and control within NECS, Inc. to set the hours of employment and pay wages to the employees of NECS, Inc.

9.      Defendant Anatra has individual involvement in NECS, Inc. in a manner affecting employment-related factors, including workplace conditions and operations, personnel or compensation.

10.     Accordingly, Defendant Anatra is the Plaintiffs' employer under the federal Equal Pay Act ("EPA"), 29 U.S.C. § 203(d) and the Connecticut Equal Pay Act ("CEPA"), Conn. Gen. Stat. § 31-75 *et. seq*.

11.     Plaintiff Patricia Black is a resident of Madison, Connecticut. At all times relevant to this Complaint, Black was an employee of Defendants as defined by C.G.S. § 46a-51(9); 42 U.S.C. § 2000e(f) and 29 U.S.C. § 203(e).

12.     Plaintiff Shawn Danielson is a resident of East Haven, Connecticut.  At all times relevant to this Complaint, Danielson was an employee of Defendants as defined by C.G.S. § 46a-51(9); 42 U.S.C. § 2000e(f) and 29 U.S.C. § 203(e).

13.     Plaintiff Ashley Platt is a resident of Middletown, Connecticut. At all times relevant to this Complaint, Platt was an employee of Defendants as defined by C.G.S. § 46a-51(9); 42 U.S.C. § 2000e(f) and 29 U.S.C. § 203(e).

**III.     JURISDICTION AND VENUE**

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has jurisdiction over Plaintiffs' claims brought under the federal Equal Pay Act pursuant to 29 U.S.C. § 216(b).

16.     Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391. All of the events or omissions giving rise to the claims in this Complaint occurred in Connecticut.

## IV.     FACTUAL ALLEGATIONS

17.     Defendant NECS is run by its President and founder, Defendant Chris Anatra, a male.

18.     Defendant hired female Plaintiff Shawn Danielson on March 17, 2003. At the time, Defendant assigned her the job title and assignment of "Tech Support."

19.     Defendant hired female Plaintiff Patricia Black in August of 2015.  At the time, Defendant assigned her the job title and assignment of "Tech Support."  At the time, Plaintiff Black had over twenty years of experience in application design, application support, system maintenance, system testing and training.

20.     Defendant hired female Plaintiff Ashley Platt on August 10, 2015. At the time, Defendant assigned her the job title and assignment of "Tech Support."

21.     Defendant hired Christopher Londa, a male, on or about February 13, 2017.

22.     Defendant assigned Londa to perform work that was equal or substantially equal to Plaintiffs, on jobs requiring equal skill, effort and responsibility and under similar working conditions to their job.

23.     Defendants assigned the three Plaintiffs and Londa the following tasks: working with NECS customers and helping them integrate and operate the software and

4

ensuring that the software was performing correctly, as well as learning their clients' software needs and ensuring that they had the proper programs for their needs.

24.     Defendants assigned Plaintiffs additional responsibilities that required greater skill, effort and responsibility than Londa, such as system testing and providing in-house training to other employees. For example, Plaintiff Black was responsible for specialized hardware and iPad set up and testing; Plaintiff Platt did onsite training and worked at food shows and Defendants also assigned Plaintiffs Platt and Danielson the additional task of providing twenty-four (24) hour support.

25.     At time Defendants hired Londa, they paid him an approximate  base salary of $62,000. Defendants paid Platt an approximate base salary of $37,000; Black an approximate base salary of $47,000 and Danielson an approximate  base salary of $54,000.

26.     Defendants pay Londa additional compensation than the Plaintiffs in the form of health insurance benefits. Defendants pay full benefits for Londa and his family, while requiring Plaintiffs to pay towards their benefits.

27.     Londa's  work was equal or substantially equal to each of the Plaintiffs, on jobs requiring equal skill, effort and responsibility and under similar working conditions to Plaintiffs' jobs.

28.     Additionally, Londa had less technical support knowledge and experience than Plaintiffs, often needed help with most tasks and was trained by Plaintiffs in Technical Support.

29.     After the discovery of the pay discrepancy,  Plaintiff Platt confronted Anatra about this inequality.  Anatra gave Platt no explanation for this inequality,

became irate, stood up, and slammed his fist on the desk in a threatening way. Anatra yelled at Platt, demanding to know the location of the public computer drive where Londa's compensation documents were stored.

30.     Soon thereafter, all documents on this public drive were removed or deleted.

31.     Within days of this discovery, Londa approached Platt and Black, attempting to justify the pay discrepancy. Londa stated that the reason for the difference was because Londa had a "family to support."

32.     On information and belief, Defendants have a pattern and practice of paying its male employees more and/or providing a higher level of benefits than to its female employees for jobs requiring equal skill, effort and responsibility and under similar working conditions in the tech support area and for compensating male employees at a rate similar or greater than the rate of pay for female employees, despite having less seniority and/or experience than their female colleagues.

## V.     LEGAL CLAIMS

**COUNT ONE:     UNEQUAL PAY IN VIOLATION OF FEDERAL EQUAL PAY ACT, 29 U.S.C. § 206(d)  ON BEHALF OF ALL PLAINTIFFS AND AS TO DEFENDANTS NECS AND ANATRA**

33.     As described above, throughout their tenure, Defendants paid Plaintiffs wages, at a rate that was substantially less than their male peers for equal work despite the fact that this work required equal skill, effort and responsibility, and was performed under similar working conditions.

34.     Defendants' decision to compensate Plaintiffs at this lower rate violated the Equal Pay Act, 29 U.S.C. § 206(d).

35.     As a direct and proximate result of Defendants' illegal termination of Plaintiffs' employment, Defendants have caused Plaintiffs to incur economic damages, including lost income and lost benefits, and attorneys' fees and costs.

**COUNT TWO:     UNEQUAL PAY IN VIOLATION OF CONNECTICUT'S EQUAL PAY ACT, C.G.S. § 31-75 *et. seq.*  ON BEHALF OF ALL PLAINTIFFS AND AS TO DEFENDANTS NECS AND ANATRA**

36.     As set forth above, throughout their tenure, Defendants paid Plaintiffs wages at a rate that was substantially less than their male peers for equal work despite the fact that this work required equal skill, effort and responsibility, and was performed under similar working conditions.

37.     Defendants' decision to compensate Plaintiff at this lower rate violated Connecticut's Equal Pay Act, C.G.S. § 31-75 *et. seq.*

38.     Defendants acted recklessly or with willful disregard of the law. Defendants at all times was fully aware they were paying Londa substantially more than the female Plaintiffs for the same work and failed to correct it even after it was brought to his attention.

39.     As a direct and proximate result of Defendants illegal termination of Plaintiffs' employment, Defendants have caused Plaintiffs to incur economic damages, including lost income and lost benefits, non-economic damages, and attorneys' fees and costs.

**COUNT THREE:     ILLEGAL DISCRIMINATION ON ACCOUNT OF SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S. § 2000E *ET. SEQ.*  ON BEHALF OF ALL PLAINTIFFS  AS TO DEFENDANT NECS**

40.     On January 10, 2018 Plaintiff Black filed a complaint of sex discrimination in violation of state and federal law with the Connecticut Commission on Human Rights

and Opportunities.  This complaint was dual-filed with the EEOC. Plaintiff Black

obtained releases of jurisdiction from both the CHRO and the EEOC. See Exhibit 1.

41.     On June 21, 2018, Plaintiff Ashley Platt filed a complaint of sex

discrimination in violation of state and federal law with the Connecticut Commission on

Human Rights and Opportunities. This complaint was dual-filed with the EEOC. Plaintiff

Platt obtained releases of jurisdiction from both the CHRO and the EEOC. See Exhibit

2.

42.     On July 2, 2018, Plaintiff Shawn Danielson filed a complaint of sex

discrimination and retaliation in violation of state and federal law with the Connecticut

Commission on Human Rights and Opportunities. This complaint was dual-filed with the

EEOC. Plaintiff Danielson obtained releases of jurisdiction from both the CHRO and the

EEOC. See Exhibit 3.

43.     In each of these complaints, Plaintiffs alleged that Defendants' treatment

of Plaintiffs, specifically with regard to Defendant's discriminatory pay practices – were

motivated at least in part because of Plaintiffs' sex.

44.     As set out more fully above, Defendant's treatment of Plaintiffs –

specifically Defendant's discriminatory pay practices - were motivated at least in part

because of Plaintiffs' sex – female.

45.     As a direct and proximate result of Defendant's unlawful treatment of

Plaintiffs, Defendant has caused Plaintiffs to incur economic damages, including lost

income and lost benefits, non-economic damages, damage to their professional

reputation, and attorneys' fees and costs.

**COUNT FOUR:      ILLEGAL DISCRIMINATION ON ACCOUNT OF SEX IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, C.G.S. § 46a-60(b)(1) ON BEHALF OF ALL PLAINTIFFS AS TO DEFENDANT NECS**

46.     As set out more fully above, Defendant's treatment of Plaintiffs – specifically Defendant's discriminatory pay practices - were motivated at least in part because of Plaintiffs' sex – female.

47.     As a direct and proximate result of Defendant's unlawful treatment of Plaintiffs Defendant has caused Plaintiffs to incur economic damages, including lost income and lost benefits, non-economic damages, damage to their professional reputation, and attorneys' fees and costs.

**COUNT FIVE:      DEFAMATION AS PLAINTIFF BLACK AS TO DEFENDANT NECS AND DEFENDANT ANATRA**

48.     As set forth above, following the filing of the complaints with the CHRO, Defendant Anatra made numerous false statements regarding Black.

49.     Specifically, Anatra stated that Black was a liar; that she made false charges about the pay discrepancy between herself and Londa; that she illegally took someone's contract; and that she  disseminated it among Defendants' employees.

50.     Defendants' false statement is defamatory per se in that it charges Plaintiff with improper conduct or lack of skill or integrity in one's profession.  Black did not make up the pay discrepancy between herself and Londa, she never illegally took anyone's contract or disseminated that information among employees. Black and Platt inadvertently found Londa's compensation information on the computer drive that was accessible to the entire office, when looking for another document.

51.     Defendants' false statements were published because Defendant Anatra made them in front of other NECS employees, including Cyndy Edwards,  Nichole Zingarella and Plaintiff Danielson.

52.     Defendants made the defamatory statement with actual malice in that Defendants published the statement with actual knowledge of its falsity or reckless disregard for its truth.

53.     At the time that Defendants made these statements, Defendants knew that Defendants were paying Christopher Londa more than the Plaintiff and that the Plaintiff had a valid good faith complaint about the pay discrepancy.

54.     Defendants made the defamatory statements with malice in fact in that they made the statements with bad faith or improper motive.  Defendants began making the statements after Plaintiff Black had sued Defendants for discriminating against her and knowing that these statements would negatively harm Plaintiff's reputation with their former co-workers.

55.     As a direct and proximate result of Defendants' defamation, Plaintiff has suffered damages, including damage to her reputation, lost wages and benefits, emotional distress, mental anguish, and attorneys' fees.

**COUNT SIX:          DEFAMATION AS PLAINTIFF PLATT AS TO DEFENDANT NECS AND DEFENDANT ANATRA**

56.     As set forth above, following the filing of the complaints with the CHRO, Defendant Anatra made numerous false statements regarding Plaintiff Platt.

57.     Specifically, Anatra stated that Platt was a liar, that her charges were false, that Platt's documents were just "pure garbage" and she was "just going after money"; that she was a "user"; a "severe liar; that "she needs to be schooled about what

it's like to take advantage of people;" that "she thinks she is gaming the system." Anatra also stated that he was going to "battle against her and nothing's going to stop me and it's gonna get bloody and I don't care…."

58.    Defendants' false statements are defamatory per se in that it charges Plaintiff with improper conduct or lack of skill or integrity in one's profession.

59.    Defendants' false statements were published because Defendant Anatra made them in front of other NECS employees, including Cyndy Edwards and Nichole Zingarella and Plaintiff Danielson.

60.    Defendants made the defamatory statement with actual malice in that Defendants published the statement with actual knowledge of its falsity or reckless disregard for its truth.

61.    At the time that Defendants made these statements, Defendants knew that Defendants were paying Christopher Londa more than the Plaintiff Platt and that Plaintiff Platt had a valid good faith complaint about the pay discrepancy.

62.    Defendants made the defamatory statements with malice in fact in that they made the statements with bad faith or improper motive.  Defendants began making the statements after Plaintiff Black had sued Defendants for discriminating against her and continued after Plaintiff Platt filed her complaint, knowing that these statements would negatively harm Plaintiff's reputations with their former co-workers.

63.    As a direct and proximate result of Defendants' defamation, Plaintiff has suffered damages, including damage to her reputation, lost wages and benefits, emotional distress, mental anguish, and attorneys' fees.

**COUNT SEVEN:     DEFAMATION AS TO PLAINTIFF DANIELSON AS TO DEFENDANT NECS AND DEFENDANT ANATRA**

64.     As set forth above, following the filing of the complaints with the CHRO, Defendant Anatra made numerous false statements regarding Plaintiff Danielson.

65.     Specifically, Anatra stated that Danielson was a liar, that her accusations about the pay discrepancy were "false" and that she had "made a choice point decision to bring false charges against the company."  Anatra also stated about Danielson, "You're lying.  You're making it up;" that her complaint was a "hodgepodge of lies;" and that she had made up the discrimination and retaliation "in her own head."  Anatra also stated, regard to a compliment by a customer, Anatra stated that it was a "complete set-up" and accused her of forcing the customer to lie or make it up when the customer sent an email in which he complimented Danielson's work.

66.     Defendants' false statement is defamatory per se in that it charges Plaintiff with improper conduct or lack of skill or integrity in one's profession.

67.     Defendants' false statements were published because Defendant Anatra made them in front of other NECS employees, including Cyndy Edwards and Nichole Zingarella.

68.     Defendants made the defamatory statement with actual malice in that Defendants published the statement with actual knowledge of its falsity or reckless disregard for its truth.

69.     At the time that Defendants made these statements, Defendants knew that Defendants were paying Christopher Londa more than the Plaintiff and that the Plaintiff had a valid good faith complaint about the pay discrepancy. Defendants also know that Danielson had not made up the customer compliment.

70.     Defendants made the defamatory statements with malice in fact in that they made the statements with bad faith or improper motive.  Defendants began making the statements after Plaintiff Black had sued Defendants for discriminating against her and escalated these comments after Plaintiffs Platt and Danielson filed their complaints; knowing that these statements would negatively harm Plaintiffs' reputations with their former co-workers.

71.     As a direct and proximate result of Defendants' defamation, Plaintiff has suffered damages, including damage to her reputation, lost wages and benefits, emotional distress, mental anguish, and attorneys' fees.

**COUNT EIGHT:     ILLEGAL RETALIATION AGAINST PLAINTIFF DANIELSON IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, C.G.S. §46a-60(b)(4) AS TO DEFENDANT NECS**

72.     As set forth above, on January 17, 2018 Defendant NECS was notified of a complaint filed with the CHRO by Plaintiff Danielson's sister, Plaintiff Black, alleging sex discrimination due to the pay discrepancy with Chris Londa.

73.     Shortly after, Defendant NECS began to subject Plaintiff Danielson to increased scrutiny and retaliatory actions.

74.     For example, on February 8, 2018 Defendant NECS gave Plaintiff Danielson a written warning for her performance as it pertained to handling of customer phone calls. Plaintiff Danielson challenged this  write up as she had records showing that there was no basis for this warning.

75.     Additionally, on February 8, 2018, Defendant NECS told Plaintiff Danielson that she could no longer work with her office door open.

76.     Also on February 8, 2018, Defendant NECS began to require Danielson to 'BCC' Nichole Zingarella, Director of Operations and Cyndy Edwards, Technical Support Supervisor on all emails.

77.     No other employees were required to work with their door open or include Edwards and Zingarella on all emails.

78.     Plaintiff Danielson met with Anatra to challenge the warning as retaliatory but it remained in her file, placing her at risk of termination.

79.     On June 25, 2018, Defendant NECS was notified that Ashley Platt, had also filed a wage discrimination complaint challenging Londa's pay.

80.     On June 26, 2018 Defendant NECS ordered Danielson to stop working overtime hours.  Defendant's policies permit up to four hours of overtime work without management approval. Until this directive, Danielson routinely supplemented her income with overtime hours. This directive caused financial harm. Additionally, it interfered with her ability to assist a particularly difficult client who she had been assigned and who required attention after hours – a fact Defendant concedes.

81.     By preventing Danielson from working at night, Defendant NECS interfered with her ability to perform her job duties.

82.     On July 2, 2018, Plaintiff Danielson filed a complaint at the CHRO alleging wage discrimination and retaliation.

83.     After receiving notice of Danielson's complaint, Defendant NECS, through Chris Anatra, made numerous verbal threats to regarding Danielson's employment, including suggesting that she leave voluntarily and stating that it was hard for her to continue to work for a company that she was suing.  Anatra also accused Danielson,

14

Black and Platt of being liars and made threatening comments about Black and Platt to Danielson.

84.    On August 14, 2018, approximately six weeks after Danielson filed her CHRO complaint, Defendant NECS fired her due to alleged performance reasons.

85.    Defendant's stated reason for firing Danielson was mere pretext; Defendant fired Danielson in part due to animus towards her due to the fact that she opposed Defendant's discriminatory conduct – both because Danielson filed her original charge of discrimination and because she opposed the discriminatory treatment of her female colleagues.

86.    By terminating her employment, Defendant NECS has violated the Connecticut Fair Employment Practices Act, C.G.S § 46a-60 *et. seq.*,  which prohibits retaliation against an employee for opposing a discriminatory employment practice.

87.    As a result of the conduct of Defendant's described above,  Danielson has suffered lost wages, benefits and other perquisites of employment, suffered pain and suffering and other emotional distress as well as incurred attorneys' fees.

**COUNT NINE:**       **ILLEGAL RETALIATION AGAINST PLAINTIFF DANIELSON IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S. § 2000E *ET. SEQ.* AS TO DEFENDANT NECS**

88.    As set forth above, Defendant NECS began to subject Plaintiff Danielson to increased scrutiny, gave her a written warning that jeopardized her employment, criticized her work performance despite years of positive performance, and denied her the ability to work overtime soon after Plaintiffs Black and Platt filed their charges of discrimination.

15

89.    On July 2, 2018, Plaintiff Danielson filed her own charge of sex based pay discrimination with the CHRO and EEOC against Defendant NECS.

90.    On August 14, 2018,  Defendant NECS fired Danielson, only 6 weeks after she filed this complaint.

91.    Defendant's stated reason for firing Danielson was mere pretext; Defendant fired Danielson in part due to animus towards her due to the fact that she opposed Defendant's discriminatory conduct – both because Danielson filed her original charge of discrimination and because she opposed the discriminatory treatment of her female colleagues.

92.    By terminating her employment, Defendants have violated 42 U.S.C. § 2000e *et. seq.*, which prohibits retaliation against an employee for opposing a discriminatory employment practice.

93.    As a result of the conduct of Defendant's described above, Danielson has suffered lost wages, benefits and other perquisites of employment, suffered pain and suffering and other emotional distress as well as incurred attorneys' fees.

94.    Defendant's stated reason for firing Danielson was mere pretext; Defendant fired Danielson in part due to animus towards her due to the fact that she opposed Defendant's discriminatory conduct – both because Danielson filed her original charge of discrimination and because she opposed the discriminatory treatment of her female colleagues.

95.    By terminating her employment, Defendant NECS has violated the Connecticut Fair Employment Practices Act, codified at C.G.S § 46a-60 *et. seq.*

96.     As a result of the conduct of Defendant's described above,  Danielson has

suffered lost wages, benefits and other perquisites of employment, suffered pain and

suffering and other emotional distress as well as incurred attorneys' fees.

**COUNT TEN:        ILLEGAL RETALIATION AGAINST PLAINTIFF DANIELSON IN
                    VIOLATION OF FEDERAL EQUAL PAY ACT, 29 U.S.C. § 206(d)
                    AS TO DEFENDANTS NECS AND ANATRA**

97.     As set forth above, in or about February 2018, after learning of the pay

discrepancy between herself and Londa, Plaintiff Danielson verbally complained to

Defendants that she believed this was discriminatory.

98.     As set forth above, Defendants first began to subject Plaintiff Danielson to

increased scrutiny, gave her a written warning that jeopardized her employment,

criticized her work performance despite years of positive performance, and denied her

the ability to work overtime after Danielson complained verbally and Plaintiffs Black and

Platt filed charges with the CHRO and EEOC.

99.     On August 14, 2018, Defendants fired Danielson, only 6 weeks after she

filed her own charge of sex based pay discrimination with the CHRO and EEOC.

100.    Defendants' stated reason for firing Danielson was mere pretext;

Defendants fired Danielson in part due to animus towards her due to the fact that she

opposed Defendants' discriminatory conduct – both because Danielson filed her original

charge of discrimination and because she opposed the discriminatory treatment of her

female colleagues.

101.    By terminating her employment, Defendants have violated the 29 U.S.C. §

215(a)(3) of the Fair Labor Standards Act, which prohibits retaliation against an

employee for verbally complaining about an equal pay act violation

17

102.    As a result of the conduct of Defendants' described above, Danielson has suffered lost wages, benefits and other perquisites of employment, suffered pain and suffering and other emotional distress as well as incurred attorneys' fees.

## PRAYER FOR RELIEF

**COUNT ONE:**       **UNEQUAL PAY IN VIOLATION OF FEDERAL EQUAL PAY ACT, 29 U.S.C. § 206(d) – ON BEHALF OF ALL PLAINTIFFS AS TO DEFENDANTS NECS AND ANATRA**

1.      Lost wages, pursuant to 29 U.S.C. § 206(d);

2.      Liquidated damages, pursuant to 29 U.S.C. § 260;

3.      Attorneys' fees, costs, pre- and post-judgment interest, pursuant to 29 U.S.C. § 216(b); and

4.      Any and all other relief as the court deems just and proper.

**COUNT TWO:**       **UNEQUAL PAY IN VIOLATION OF CONNECTICUT EQUAL PAY ACT, C.G.S. § 31-75 *et. seq.* - ON BEHALF OF ALL PLAINTIFFS AS TO DEFENDANTS NECS AND ANATRA**

1.      Lost wages, pursuant to C.G.S. § 31-76(b);

2.      Compensatory damages, pursuant to C.G.S. § 31-76(b);

3.      Punitive damages, pursuant to C.G.S. § 31-76(b);

4.      Attorneys' fees, costs, pre- and post-judgment interest, pursuant to C.G.S. § 31-76(b); and

5.      Any and all other relief as the court deems just and proper.

**COUNT THREE:     ILLEGAL DISCRIMINATION ON ACCOUNT OF SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 19654, AS AMENDED, 42 U.S.C. § 2000e *et. seq.* ON BEHALF OF ALL PLAINTIFFS AS TO DEFENDANT NECS**

1.      Lost wages, benefits and other perquisites of employment, pursuant to 42 U.S.C. § 2000e-5;

2.      Compensatory damages, pursuant to 42 U.S.C. § 1981a;

3.      Punitive damages, 42 U.S.C. § 1981a;

4.      Attorneys' Fees and costs, 42 U.S.C. § 2000e-5;

5.      Interest; and

6.      Such other and further relief as the Court deems just and equitable.


**COUNT FOUR:     ILLEGAL DISCRIMINATION ON ACCOUNT OF SEX IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, C.G.S. § 46a-60(b)(1) ON BEHALF OF ALL PLAINTIFFS AS TO DEFENDANT NECS**

1.      Lost wages, pursuant to C.G.S. § 46a-60 *et. seq.*;

2.      Reinstatement or front pay, in lieu of reinstatement, pursuant to C.G.S. § 46a-60 *et. seq.*;

3.      Compensatory damages, including back pay with interest and lost benefits, emotional distress and mental anguish, pursuant to C.G.S. §46a-60 *et. seq.*;

4.      Attorneys' fees, costs, pre- and post-judgment interest, pursuant to C.G. S. § 46a-60 *et. seq.*; and

5.      Any and all other relief as the court deems just and proper.

**COUNT FIVE:     DEFAMATION AGAINST PLAINTIFF BLACK AS TO DEFENDANTS NECS, INC AND ANATRA**

1.      Compensatory damages, including back pay, lost benefits, emotional distress, mental anguish and damage to Plaintiffs' reputation;

2.      Punitive damages under common law;

3.      Costs; and

4. Any and all other relief as the court deems just and proper.

**COUNT SIX:** **DEFAMATION AGAINT PLAINTIFF PLATT AS TO DEFENDANTS NECS, INC AND ANATRA**

1. Compensatory damages, including back pay, lost benefits, emotional distress, mental anguish and damage to Plaintiffs' reputation;

2. Punitive damages under common law;

3. Costs; and

4. Any and all other relief as the court deems just and proper.

**COUNT SEVEN:** **DEFAMATION AGAINT PLAINTIFF DANIELSON AS TO DEFENDANTS NECS, INC AND ANATRA**

1. Compensatory damages, including back pay, lost benefits, emotional distress, mental anguish and damage to Plaintiffs' reputation;

2. Punitive damages under common law;

3. Costs; and

4. Any and all other relief as the court deems just and proper.

**COUNT EIGHT:** **RETALIATION AGAINST PLAINTIFF DANIELSON IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, C.G.S. § 46a-60(b)(4) AS TO DEFENDANT NECS**

1. Lost wages, pursuant to C.G.S. § 46a-60 *et. seq.*;

2. Reinstatement or front pay, in lieu of reinstatement, pursuant to C.G.S. § 46a-60 *et. seq.*;

3. Compensatory damages, including back pay with interest and lost benefits, emotional distress and mental anguish, pursuant to C.G.S. §46a-60 *et. seq.*;

4. Attorneys' fees, costs, pre- and post-judgment interest, pursuant to C.G. S. § 46a-60 *et. seq.*; and

5. Any and all other relief as the court deems just and proper.

**COUNT NINE:**      **ILLEGAL RETALIATION AGAINST PLAINTIFF DANIELSON IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 19654, AS AMENDED, 42 U.S.C. § 2000e *et. seq.* AS TO DEFENDANT NECS**

1.      Lost wages, benefits and other perquisites of employment, pursuant to 42 U.S.C. § 2000e-5;

2.      Compensatory damages, pursuant to 42 U.S.C. § 1981a;

3.      Punitive damages, pursuant to 42 U.S.C. § 1981a;

4.      Attorneys' Fees and costs, pursuant to 42 U.S.C. § 2000e-5

5.       Interest; and

6.      Such other and further relief as the Court deems just and equitable.


**COUNT TEN:**      **ILLEGAL RETALIATION AGAINST PLAINTIFF DANIELSON IN VIOLATION OF FEDERAL EQUAL PAY ACT, 29 U.S.C. § 206(d) AS TO DEFENDANTS NECS AND ANATRA**

1.      Lost wages, pursuant to 29 U.S.C. § 215(a)(3);

2.      Liquidated damages, pursuant to 29 U.S.C. § 215(a)(3);

3.      Attorneys' fees, costs, pre- and post-judgment interest, pursuant to 29 U.S.C. § 216(b); and

4.      Any and all other relief as the court deems just and proper.

## JURY DEMAND

The Plaintiff requests a trial before a jury on all issues so triable.

Plaintiffs Patricia Black, Ashley Platt and
Shawn Danielson,

By: */s/ Deborah L. McKenna*
Deborah L. McKenna
Federal Bar No. ct17326
The Hayber Law Firm, LLC
900 Chapel Street, 11th Floor
New Haven, CT 06510
(203) 691-6491 (tel)
(860) 218-9555 (fax)
dmckenna@hayberlawfirm.com
Attorney for Plaintiff