UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PATRICIA BLACK *et al.*,
    *Plaintiffs*,

v.

NEW ENGLAND COMPUTER SERVICES,
INC. *et al.*,
    *Defendants*.

No. 3:18-cv-02101 (JAM)

**ORDER GRANTING DEFENDANTS' MOTION *IN LIMINE***

Wikipedia defines a "Perry Mason moment" to be "whenever information is unexpectedly . . . and often dramatically introduced into the record that changes the perception of the proceedings greatly and often influences the outcome."[1] Counsel for the plaintiffs in this action planned a Perry Mason moment. She deposed one of the defendants about a key meeting he had with one of the plaintiffs and then surprised him with a secret tape recording that contradicted his sworn account.

But the problem is that this Court's initial discovery protocols required counsel to disclose the recording from the get-go of this lawsuit. Counsel did not do so. And so the defendants now move to preclude the recording for an obvious violation of the Court's discovery rules. I will grant their motion.

**BACKGROUND**

The plaintiffs are three women—Patricia Black, Ashley Platt, and Shawn Danielson—who were employed with New England Computer Services, Inc. They worked with the

---

[1] Wikipedia, Perry Mason moment, available at https://en.wikipedia.org/wiki/Perry_Mason_moment [https://perma.cc/7QMZ-LLXG] (last accessed March 3, 2021).

1

company's owner and president—Chris Anatra—and they have filed this lawsuit against both the company and Anatra.

The plaintiffs' claims stem in part from a company meeting that occurred in August 2018. Anatra allegedly summoned one of the plaintiffs—Danielson—to discuss her employment status with the company. According to the plaintiffs, Anatra made false and defamatory statements about all three of the plaintiffs at this meeting, largely accusing them in vitriolic terms of lying about him and the company in discrimination complaints they had filed with the Connecticut Commission on Human Rights and Opportunities. Doc. #17 at 9-13.

Unbeknownst to Anatra, Danielson secretly audio-recorded this meeting. Danielson in turn gave this recording to her counsel who later filed this lawsuit for the three plaintiffs. Doc. #89 at 56-57. The lawsuit alleges several claims for unequal pay, sex discrimination, and retaliation, as well as related claims for defamation stemming from the statements allegedly made by Anatra at the secretly recorded meeting.

The District of Connecticut is one among numerous federal district courts that have adopted special discovery disclosure requirements for most employment discrimination cases. These procedures are known as the Initial Discovery Protocols for Employment Cases Alleging Adverse Actions (the "Protocols" or the "IDP"). Their stated purpose "is to encourage parties and their counsel to exchange the most relevant information and documents early in the case, to assist in framing the issues to be resolved and to plan for more efficient and targeted discovery." Doc. #5 at 2.

Because it has been more than eight years since the District of Connecticut adopted the Protocols, they are well known to Connecticut's employment bar. There is no question that they were known to the plaintiffs' counsel in this case. On the same day the complaint was filed, the

Court entered a docket notice with a copy of the Protocols, providing that the plaintiffs must promptly file a statement if there were grounds to conclude that the Protocols should *not* apply to this case. Doc. #5.

No such statement was filed. Instead, counsel for the plaintiffs filed a Rule 26(f) report in February 2019 stating that "[t]he Court's Initial Discovery Protocols apply in this case and these disclosures will be served by March 25, 2019." Doc. #16 at 4.

That date came and went without disclosure of the secret recording. This was a clear violation of the Protocols' initial disclosure requirements. The Protocols itemize categories of "Documents that Plaintiff must produce to Defendant," a lengthy listing that includes "[a]ll communications concerning the factual allegations or claims at issue in this lawsuit between the plaintiff and the defendant." Doc. #5 at 4 (quoting IDP Part III(2)(a)). It is self-evident that an audio recording of a conversation between a plaintiff (Danielson) and a defendant (Anatra) falls within the scope of this disclosure requirement.[2]

The secret recording would not surface until counsel for the plaintiffs sprung it on Anatra during the course of his deposition in December 2019. Counsel asked Anatra at this deposition if he had made the defamatory statements as alleged in the complaint. When Anatra denied doing so, counsel then surprised him by playing excerpts of the recording. Doc. #61 at 3; Doc. #63 at 5. After counsel for the defendants objected that the recording had not been previously disclosed, counsel claimed she would disclose the recording but did not end up doing so until several months later in April 2020 and after the close of discovery in this action. Doc. #63-1 at 2; Doc. #68 at 3. The defendants now move *in limine* to preclude the recording at trial. Doc. #61.

---

[2] The Protocols define the term "concerning" to mean "referring to, describing, evidencing, or constituting." Doc. #5 at 3 (quoting IDP Part II(1)(a)). The Protocols further define the term "document" to be co-extensive with the term as used in the Federal Rules of Civil Procedure, which includes electronically stored information such as audio or sound recordings. *Ibid.* (citing IDP Part II(1)(b) (citing Fed. R. Civ. P. 34(a))).

## DISCUSSION

If a party fails to comply with a discovery disclosure requirement, a court has discretion to preclude the evidence "unless the failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1). Although Rule 37(c)(1) applies on its face to a failure to make initial disclosures as required under Fed. R. Civ. P. 26(a), there is no reason to suppose it should not equally apply to a failure to comply with the Protocols' special court-ordered disclosure requirements. The Protocols state that "they are intended to supersede the parties' obligations to make initial disclosures" under Rule 26(a), *see* Doc. #5 at 2, and the Protocols' court-ordered disclosure obligations are just as mandatory as the initial disclosure obligations under Rule 26(a) that they are intended to supersede.

Having previously assured the Court that they would make their initial disclosures as required under the Protocols, the plaintiffs are in no position now to challenge the validity of the Protocols as inconsistent with Rule 26(a). Nor would such a challenge have merit in light of the text of Rule 26(a) which allows for courts to depart from the baseline requirements of Rule 26(a)(1) "as otherwise stipulated or ordered by the court." Fed. R. Civ. P. 26(a)(1)(A).

As the Second Circuit has recognized, the purpose of allowing a court to preclude evidence under Rule 37 is to "prevent the practice of 'sandbagging' an opposing party with new evidence." *Haas v. Delaware and Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (citation omitted). By its terms Rule 37 requires courts to consider whether the failure to disclose "was substantially justified or is harmless," and the Second Circuit in turn has listed a broad range of non-exclusive factors for courts to consider when deciding whether to preclude evidence as a sanction for failure to disclose. In one case, for example, the Second Circuit has instructed courts to consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2)

4

the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) (internal brackets omitted). In another case, the Second Circuit has instructed courts to consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (internal quotations omitted).

I will start with the plaintiffs' reasons for failing to disclose. They rely on an "impeachment" exception to the initial disclosure requirements under Rule 26(a)(1)(A)(ii) (requiring initial disclosure of documents that a party "may use to support its claims or defenses, unless the use would be solely for impeachment"). But this case is governed by the Protocols, not by Rule 26(a). As noted above, the Protocols expressly *supersede* the initial disclosure requirements of Rule 26(a). And the text of the Protocols plainly have no impeachment exception allowing a party to withhold communications between a plaintiff and a defendant.

If counsel in good faith had believed that the Protocols were subject to an impeachment exception, one might have expected counsel to say so when she made her disclosures to the defendants. But the record here shows that counsel promised to produce "[a]ll communications concerning the factual allegations or claims at issue in this lawsuit with the plaintiffs and the defendant," with nary a mention of withholding any documents for impeachment purposes. Doc. #63-1 at 8.

Is there any good reason why counsel ignored the Protocols? None at all. Even after the defendants filed their motion to preclude the recording and explicitly invoked the plaintiffs'

5

special disclosure obligations under the Protocols, counsel filed a response that does not even cite or acknowledge the Protocols—relying instead solely on the superseded terms of Rule 26(a)(1). *Compare* Doc. #61 at 1-2 *with* Doc. #63 at 3.

This suggests incompetence, evasion, or maybe both. The inference is strengthened by counsel's effort to ambush Anatra with the recording at his deposition, as well as by the months-long further delay by counsel in producing the recording even after it was requested by the defendants when it was played at the deposition. An attorney of reasonable competence would have timely disclosed the recording just as the Protocols require. If the failure to disclose was simply an accident, then an attorney of reasonable competence and good faith would have produced the audio recording promptly when requested by the opposing party and then further consulted with opposing counsel to determine if there were remedial measures that they could agree on to remedy the accidental failure to disclose. An attorney of reasonable competence and good faith would certainly have acknowledged to the Court their obvious obligation to disclose the recording rather than altogether ignoring the Protocols and what they require.[3]

I next consider issues of prejudice. As for prejudice to the plaintiffs, the recording is likely the best evidence of what was actually said by Anatra to establish the plaintiffs' defamation claims. But even if the recordings are not introduced as evidence, the plaintiffs remain free to elicit testimony from the meeting participants about what was said. Preclusion of the recording will not prevent the plaintiffs from maintaining any of their claims.

---

[3] The lack of acknowledgement persisted right through oral argument of this motion when counsel stated that "in an abundance of caution, yes, I should have turned [the audio recording] over." Doc. #89 at 56. The Protocols, however, flatly required the recording to be disclosed; it did not leave it to the discretion of counsel "in an abundance of caution" to decide whether or not to disclose. Nor is there the least bit of merit to counsel's blame-the-victim argument faulting the defendants for failing to make an earlier or more insistent demand for the recording. Doc. #63 at 5-6; Doc. #89 at 55.

As for prejudice to the defendants, counsel for the plaintiffs exploited the failure to comply with the Protocols by eliciting statements from Anatra at his deposition that are allegedly contradicted by the audio recording. Counsel's evident plan was to magnify the impact of the recording, knowing that—even if it were played at trial ostensibly only to impeach Anatra—a jury would likely treat the recording as the best substantive evidence of what was actually said during the meeting. Moreover, it is evident that by coaxing deposition answers at odds with what was stated on the recording, counsel hoped to create a record that would detract from (or even demolish) the overall credibility of Anatra's testimony concerning his broader dealings with the plaintiffs for purposes of their primary claims for unequal pay, discrimination, and retaliation.

It is no answer to say that Anatra was not privileged to lie or misstate facts during his deposition (if that is what he did). When months or years elapse between a meeting and a sworn deposition about what was said at the meeting, a witness's account may depart from what actually occurred for reasons not evincing an intention to deceive but for lack of memory or accurate recollection. The relevant issue is that Anatra had a right under the Protocols to listen to the recording *before* facing interrogation at his deposition about what he had said. "A party whose conversation was secretly recorded should not be subjected to a deposition, the partial purpose of which is simply to create inconsistencies or otherwise set up impeachment in the defendants' testimony, without the defendant having had a chance to review the tapes—the same opportunity that plaintiff had prior to her deposition." *Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354, 357 (D. Conn. 2006) (citation, internal quotations, and brackets omitted).

It is true that the Protocols do not state that a failure to comply will result in the preclusion of evidence. But "[p]arties and counsel have no absolute entitlement to be 'warned'

7

that they disobey court orders at their peril." *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991).

I have also considered the possibility of lesser measures as an alternative to an order precluding the recording. The discovery period has long since closed in this action and had already closed by the time that counsel for plaintiffs got around to producing the recording. Lesser remedial measures would entail opening up discovery for new depositions and to explore the authenticity and circumstances of Danielson's creation of the recording. This would be time-consuming and costly. And for what purpose? To enable or reward counsel's reckless or intentional disregard for the Court's disclosure rules. That makes no sense to me.

I have considered all the factors that the Second Circuit requires. I conclude on balance that an order of preclusion is warranted. I will preclude the recording from trial as well as any reference to its creation or existence and any impeachment of any witness on grounds of any alleged discrepancy between their statements or testimony and the contents of the recording. The secret recording did not and does not exist for purposes of this trial.

## CONCLUSION

For the reasons set forth above, the Court GRANTS defendants' motion *in limine*.

It is so ordered.

Dated at New Haven this 4th day of March 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge