## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **Patricia Black, Ashley Platt,** | : | **Civil Action No.** |
| **Shawn Danielson,** | : | **3:18-cv-02101-JAM** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **New England Computer Services, Inc.** | : | |
| **and Chris Anatra** | : | |
| Defendants. | : | **JUNE 9, 2021** |

### PLAINTIFFS' AMENDED PROPOSED JURY VOIR DIRE

Pursuant to Rule 51 of the Federal Rules of Civil Procedure and this Court's Pre-Trial

Order, the Plaintiffs Patricia Black, Ashley Platt and Shawn Danielson submit the following

proposed jury instructions. The Plaintiffs reserve their right to amend these proposed instructions

in response to events which occur during the course of the trial.

1.      **BASIS OF THE LAWSUIT**

The Plaintiffs Patricia Black, Shawn Danielson, and Ashley Platt claim that Defendants NECS, Inc. and Chris Anatra violated the following laws: the Federal Equal Pay Act, the Connecticut Equal Pay Act, Title VII on the basis of sex, and the Connecticut Fair Employment Practices Act on the basis of sex.  The Plaintiffs allege that Defendants violated these laws because they paid Chris Londa, a male, higher wages even though he was performing the same job as the Plaintiffs. Each Plaintiff also claims that Defendant Anatra defamed them and owes them damages for defamation. Finally, Ms. Danielson alleges that Defendant NECS, Inc. illegally retaliated against her under the Federal EPA, Connecticut EPA, Title VII, and the Connecticut Fair Employment Practices Act.  Ms. Danielson claims that Defendant NECS, Inc. fired her in part because she protested Mr. Londa's higher wages and for filing a claim at the Connecticut Commission on Human Rights and Opportunities, called the CHRO. The Defendants deny liability.

Each claim is separate and distinct. That is, you may find a violation with respect to one of these claims without filing a violation with respect to another claim. For example, you may find that Defendants violated the Equal Pay Act, but not the defamation laws. You can also find that Defendant violated both of those laws.  You should consider each of these claims separately. I will explain the law with respect to each claim.

2.       **BURDEN OF PROOF & PREPONDERANCE OF THE EVIDENCE**

Because this is a civil lawsuit, the Plaintiffs have the burden of proving each disputed part of their claims by a preponderance of the evidence.  I will now explain what "preponderance of the evidence means in this case." To establish a fact by a preponderance of the evidence, the Plaintiffs must prove that the fact is more likely true than not true. In other words, if you find that the credible evidence on a given issue is evenly divided between the Plaintiffs and the Defendants, then you must decide that issue for the Defendants. However, if the Plaintiffs prove that a fact is more likely true than not, even slightly more true than not, then you are to find that the Plaintiffs have proven the fact by a preponderance of the evidence.

If the Plaintiffs fail to prove an issue by a preponderance of the evidence, then you must find that issue in favor of the Defendants. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented. Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should not consider or discuss that standard in your deliberations.[1]

---

[1] *See Ferguson v. Fairfield Caterers, Inc.,* Case No. 3:11-cv-01558-JAM, ECF No. 167, *4-5 (burden of proof & preponderance of the evidence)

[For certain claims and issues in this case, the Defendants have the burden of proof.  The Defendants have the burden of proof on the following issues: 1) Their affirmative defenses under the Federal EPA and Connecticut EPA, 2) their Good Faith defense to avoid liquidated damages, and 3) failure to mitigate damages as to Ms. Danielson's retaliation claims.

The Defendants' have the burden of proving their affirmative defenses and their failure to mitigate defense by a preponderance of the evidence.  The Defendants' have a higher burden of proof as to their "Good Faith" defense.  I will describe that burden of proof in a few minutes.][2]

---

[2] The Plaintiffs have moved *in limine* on each of these affirmative defenses. Should the Court grant these motions, the bracketed text would not be necessary. But, if the Court denies one or more of these motions and allows any of these affirmative defenses, the Plaintiffs request that this bracketed text be included in this instruction.

2.      **CORPORATE DEFENDANT/GENERAL PRINCIPLES OF AGENCY**
        **(Supplement to Court's Standard Instructions)**

One of the Defendants in this action is a corporation, and acts through its employees. It is established law that under certain circumstances an employer may be liable for the wrongs, even willful wrongs, done by its representations if the wrongs are committed during the scope of the employee's employment duties and in furtherance of the employer's business. An employer's liability rests upon a broad principle of public policy that if a corporation prefers to manage its affairs through others, the corporation is bound to manage them in such a way that no person shall suffer injury from a wrong done by that other while engaged upon the employer's business and acting within the scope of his or her employment.

The fact that an employee was not specifically authorized to commit the act or was even violating instructions which had been given to him or her does not relieve the corporation from liability. A corporation is liable even if the employee was acting out of personal animosity, if the acts were committed within the scope of his or her employment.

In this case, it is not disputed that Defendant Chris Anatra, Nicole Zingarella and Cyndy Edwards were engaged in the business of the Defendant NESC and were acting within the scope of their employment during the Plaintiffs' treatment. It is undisputed that any wrongs that you might find any of these individuals committed were the result of their attempts to carry out the work that was entrusted to them by the corporation. Therefore, I instruct you that Defendant NECS is liable for its conduct.[3]

Now I am not suggesting that Defendant NECS is liable. Whether or not the Plaintiffs' was discriminated against as they claim is a matter for you to decide in accordance with these

---

[3] See Devitt & Blackmar, 3 Federal Jury Practices & Instructions, § 71.09 at 26 (4th ed. 1987); Wright, Fitzgerald, and Akerman, Conn Law of Torts, § 63, n. 8 at 161-4 (3rd ed. 1991); *Burlington Industries* v. *Ellerth*, 524 U.S. 742, 764, 118 S. Ct. 2257, 2270 (1998).

instructions.  I am only instructing you that you must find that Defendant NECS is legally

responsible if you find that Chris Anatra or any of NECS's other employees discriminated and or

retaliated against the Plaintiffs.

4.      **FEDERAL EQUAL PAY ACT**

Employers must pay their employees equal wages for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  Congress passed the Equal Pay Act (EPA) "to legislate out of existence a long-held, but outmoded societal view that a man should be paid more than a woman for the same work. The EPA required employers to pay equal wages for equal work." [4]

Here, Plaintiffs contend that Defendants NECS, Inc. and Chris Anatra violated the Federal Equal Pay Act.  The Plaintiffs claim that they all worked as Technical Support Representatives but were paid less than Chris Londa, a male counterpart they allege also worked as a Technical Support Representative.  The Defendants dispute Plaintiffs' claims.  Defendants claim that they hired Mr. Londa for a different position.  Defendants claim that they hired Mr. Londa as a project manager and paid him a higher salary because of the duties associated with that position.

The fact that the Plaintiffs have brought suit does not mean that they have suffered the wrong that they claim.  The Plaintiffs must prove their case, and you may not attach any weight to the mere fact that allegations of wrongdoing have been made.

---

[4] See, 29 U.S.C. § 206(d)(1) ("The EPA requires that employees, regardless of gender, be paid equally for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999) ("The purpose behind the enactment of the EPA was to legislate out of existence a long-held, but outmoded societal view that a man should be paid more than a woman for the same work. The EPA required employers to pay equal wages for equal work."  See, *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)).

## 4A.    FEDERAL EQUAL PAY ACT – THE DEFINITION OF EMPLOYER

The first question you must decide is whether Mr. Anatra is legally responsible to the Plaintiffs under the Equal Pay Act.  The Plaintiffs claim that NECS, Inc. and Chris Anatra are both employers responsible for damages under the Federal and Connecticut Equal Pay Acts.  The parties agree that NECS Inc. is an employer.  You must conclude that NECS, Inc. is an employer for purposes of the federal and Connecticut EPAs.

You will decide whether Mr. Anatra is an employer in addition to NECS. [5]  For an individual to be an employer, there must be more than just evidence that the individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function.... Instead, to be an 'employer, an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment.

In determining whether Anatra is an employer, you can consider factors such as  1) whether Mr. Anatra can hire or fire employees at NECS, 2) whether Mr. Anatra is involved in determining the terms and conditions of employment at NECS; 3) whether Mr. Anatra is involved in setting wage rates for employees at NECS, or 4) whether Mr. Anatra maintains employment records at NECS.  Plaintiffs do not have to prove each factor to show that Mr.

---

[5] *Carter v. Dutchess Cmty. Coll.,* 735 F.2d 8, 12 (2d Cir. 1984), holding modified by *Danneskjold v. Hausrath,* 82 F.3d 37 (2d Cir. 1996), and holding modified by *Zheng v. Liberty Apparel Co. Inc*., 355 F.3d 61 (2d Cir. 2003) (The "economic reality" test since has been refined and now is understood to include inquiries into: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9 Cir.1983)). *Irizarry v. Catsimatidis,* 722 F.3d 99, 110-11 (2d Cir. 2013) ("For an individual to be an employer, there must be more than just "[e]vidence that [the] individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function.... Instead, to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment. … Using this 'economic reality' test, we must decide whether [Catsimatidis] is an employer under the FLSA. See RSR, 172 F.3d at 140. Is there "evidence showing his authority over management, supervision, and oversight of [Gristede's] affairs in general," see id., as well as evidence under the Carter framework or any other factors that reflect Catsimatidis's exercise of direct control over the plaintiff employees?").

Anatra is an employer. These factors are meant to guide you in determining whether Mr. Anatra

is an employer based on the economic reality of his relationship with Plaintiffs.

**4B.   FEDERAL EQUAL PAY ACT – THE ELEMENTS OF THE CLAIM**

The second question you must decide is whether the Plaintiffs proved by a preponderance of the evidence that Defendant or Defendants violated the Equal Pay Act. In order to prove a violation of the EPA, the Plaintiffs must prove that 1) the employer pays different wages to employees of the opposite sex; 2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and 3) the jobs are performed under similar working conditions."[6]  The Plaintiffs do not have to prove that Defendants intended to violate the EPA to prevail.[7]

---

[6] *Ryduchowski v. Port Auth. of New York & New Jersey*, 203 F.3d 135, 142 (2d Cir. 2000) ("[A] plaintiff must demonstrate that "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions."

[7] *Ryduchowski v. Port Auth. of New York & New Jersey*, 203 F.3d 135, 142 (2d Cir. 2000) ("[U]nlike Title VII, the EPA does not require a plaintiff to establish an employer's discriminatory intent.")

**4C.    FEDERAL EQUAL PAY ACT - FIRST ELEMENT – WHETHER THE EMPLOYER PAYS DIFFERENT WAGES TO EMPLOYEES OF THE OPPOSITE SEX**

In the present case, the parties do not dispute that Londa was paid higher wages than each of the Plaintiffs.  You should find for the Plaintiffs on this factor.

**4D.    FEDERAL EQUAL PAY ACT -SECOND ELEMENT – WHETHER THE EMPLOYEE PERFORM EQUAL WORK ON JOBS REQUIRING EQUAL SKILL, EFFORT, AND RESPONSIBILITY**

The second element the Plaintiffs must prove is that they performed "equal work on jobs requiring equal skill, effort, and responsibility."  Plaintiffs do not have to show that their jobs are identical in every respect to Mr. Londa's.  The Plaintiffs have to show that a wage disparity exists between two jobs where the skill, effort and responsibility required is substantially equal.[8] Skill for purposes of this section includes consideration of such factors as experience, training, education, and ability.[9]  Effort is the "physical or mental exertion required in performing a job.[10]

Just because an employer assigns a male employee some additional duties does not automatically justify paying that employee more than a female co-worker otherwise performing "equal work on jobs requiring equal skill, effort, and responsibility." "The crucial inquiry is "whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical."[11] Additional duties or tasks assigned to a male employee

---

[8] *Hodgson v. Corning Glass Works*, 474 F.2d 226, 234 (2d Cir. 1973), *aff'd sub nom. Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974) ("[T]he jobs under analysis need not be identical in every respect before the Equal Pay Act is applicable; inconsequential differences can be disregarded as long as the jobs are "substantially equal.")

[9] 29 C.F.R. § 1620.15(a) ("Skill includes consideration of such factors as experience, training, education, and ability.")

[10] *Usery v. Columbia Univ.*, 568 F.2d 953, 959 (2d Cir. 1977) ("Under the Act, "effort" is the physical or mental exertion required in performing a job.")

[11] *Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003) ("In determining whether two jobs are equal, the crucial inquiry is "whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical.")

will not justify a pay differential unless the additional tasks consume a significant total of all of the employee's time.[12]

---

[12] *Usery v. Columbia Univ.*, 568 F.2d 953, 959 (2d Cir. 1977 ("Time expended on additional tasks assigned to a male employee does not justify a wage disparity if those additional tasks do not consume a significant portion of all of the employee's time.").

**4E.     FEDERAL EQUAL PAY ACT -THIRD ELEMENT – WHETHER THE JOBS ARE PERFORMED UNDER SIMILAR WORKING CONDITIONS**

Finally, the Plaintiffs must prove that they performed their work "under similar working conditions" as their male counterpart.  The element of working conditions encompasses two subfactors: surroundings and hazards.  Surroundings measures the elements, such as toxic chemicals or fumes, regularly encountered by a worker, their intensity, and their frequency.  Hazards takes into account the physical hazards regularly encountered, their frequency, and the severity of injury they can cause.[13]

Thus, to satisfy this prong, the Plaintiffs have to prove that Mr. Londa did not perform his work in more dangerous conditions than the Plaintiffs.

---

[13] *Corning Glass Works v. Brennan*, 417 U.S. 188, 202, 94 S. Ct. 2223, 2231–32, 41 L. Ed. 2d 1 (1974) ("…the element of working conditions encompasses two subfactors: 'surroundings' and 'hazards.' 'Surroundings' measures the elements, such as toxic chemicals or fumes, regularly encountered by a worker, their intensity, and their frequency. 'Hazards' takes into account the physical hazards regularly encountered, their frequency, and the severity of injury they can cause. This definition of 'working conditions' is not only manifested in Corning's own job evaluation plans but is also well accepted across a wide range of American industry."); *29 C.F.R. § 1620.18(a)* ("In order for the equal pay standard to apply, the jobs are required to be performed under similar working conditions. It should be noted that the EPA adopts the flexible standard of similarity as a basis for testing this requirement. In determining whether the requirement is met, a practical judgment is required in light of whether the differences in working conditions are the kind customarily taken into consideration in setting wage levels. The mere fact that jobs are in different departments of an establishment will not necessarily mean that the jobs are performed under dissimilar working conditions. This may or may not be the case. The term "similar working conditions" encompasses two subfactors: "surroundings" and "hazards." "Surroundings" measure the elements, such as toxic chemicals or fumes, regularly encountered by a worker, their intensity and their frequency. "Hazards" take into account the physical hazards regularly encountered, their frequency and the severity of injury they can cause. The phrase "working conditions" does not encompass shift differentials."); *Usery v. Columbia Univ.,* 568 F.2d 953, 961 (2d Cir. 1977) (the concept of "working conditions" encompasses the "hazards" of employment. Specifically, "the physical hazards regularly encountered, their frequency, and the severity of injury they can cause" are taken into account.") .

**4F.    FEDERAL EQUAL PAY ACT - AFFIRMATIVE DEFENSES**

If you conclude the Plaintiffs have proven each of the three elements they must prove to

establish a violation of the Equal Pay Act, you must decide whether the Defendant can prove the

wage disparity is justified by an affirmative defense.  The Defendants claim that they did not

violate the Equal Pay Act because the wage disparity was based on a "factor other than sex."[14]

The Defendants have the burden of proving this affirmative defense.  The employer has two

burdens.  First, Defendants have a "burden of persuasion" that requires them to introduce

evidence that they actually relied on a "factor other than sex" in setting wages.[15]  Second, the

Defendants have a "heavy burden" to prove that they actually relied on a "factor other than sex"

in determining the male employee's wages.[16]

---

[14] 29 U.S.C. § 206(d)(1) ("No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.")

[15] *Belfi* v. *Prendergast*, 191 F.3d 129, 136 (2d Cir. 1999) ("…the burden of persuasion shifts to the defendant to show that the wage disparity is justified by one of the affirmative defenses provided under the Act: … or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1)); *Aldrich* v. *Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525 (2d Cir. 1992) ("we conclude that employers cannot meet their burden of proving that a factor-other-than-sex is responsible for a wage differential by asserting use of a gender-neutral classification system without more."); *Tomka* v. *Seiler Corp.*, 66 F.3d 1295, 1312 (2d Cir. 1995) ("In response to Tomka's assertions, Seiler justifies Abrams' and the three account managers' higher salaries by alleging that the discrepancies resulted from "factors other than sex." Seiler contended, and the district court agreed, that Abrams' higher salary resulted from the fact that he had over ten years of experience with a Seiler competitor. While Abrams' experience may very well explain the discrepancy, Seiler has the burden of persuasion to show both that it based Abrams' higher salary on this factor and that experience is a job-related qualification for the position in question. See id. at 527. Seiler's mere assertion that Abrams' salary was based on his experience is insufficient to meet this burden, and the district court therefore erred in holding that Seiler had established its "factor other than sex" affirmative defense.")

[16] *Jamilik* v. *Yale Univ.*, 362 F. App'x 148, 150 (2d Cir. 2009) ("This Court has previously determined that defendants face a heavy burden in establishing an affirmative defense to an EPA claim.");

Employers relying on the "differential based on any factor other than sex" defense cannot simply claim that the factor resulting in the wage discrepancy was not sex-based.  Employers must prove that the factor other than sex that led to the wage discrepancy was adopted and relied upon for a legitimate business purpose.[17]  This means that the "factor other than sex" was adopted to serve a legitimate business goal of the company.  Further, the "factor other than sex" must be related to the job itself.[18]

Finally, employers cannot prove they relied on the "factor other than sex" based solely on the fact that the male employee received a higher salary at his last position.  Because the factor other than sex must be related to the job itself, a male employee's prior pay by itself is not a job-related factor.[19]

_Ryduchowski_ v. _Port Auth. of New York & New Jersey_, 203 F.3d 135, 143 (2d Cir. 2000) ("The burden of establishing one of the four affirmative defenses is "a heavy one[.]")

[17] _Belfi v. Prendergast_, 191 F.3d 129, 136 (2d Cir. 1999) ("Further, to successfully establish the "factor other than sex" defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential. _See Aldrich v. Randolph Cent. Sch. Dist.,_ 963 F.2d 520, 526–27 & n. 1 (2d Cir.1992); _EEOC v. J.C. Penney Co., Inc.,_ 843 F.2d 249, 253 (6th Cir.1988) ("[T]he 'factor other than sex' defense does not include literally _any_ other factor, but a factor that, at a minimum, was adopted for a legitimate business reason.")).

[18] _Aldrich v. Randolph Cent. Sch. Dist.,_ 963 F.2d 520, 525 (2d Cir. 1992) ( "Without a job-relatedness requirement, the factor-other-than-sex defense would provide a gaping loophole in the statute through which many pretexts for discrimination would be sanctioned.")

[19] _Aldrich v. Randolph Cent. Sch. Dist.,_ 963 F.2d 520, 525 (2d Cir. 1992) ("Based on this statutory history, we conclude that employers cannot meet their burden of proving that a factor-other-than-sex is responsible for a wage differential by asserting use of a gender-neutral classification system without more.") _Id._ ("Without a job-relatedness requirement, the factor-other-than-sex defense would provide a gaping loophole in the statute through which many pretexts for discrimination would be sanctioned."); _Rizo v. Yovino_, 950 F.3d 1217, 1226 (9th Cir.), _cert. denied_, 141 S. Ct. 189, 207 L. Ed. 2d 1115 (2020) (holding that prior pay by itself is not a "factor other than sex"); Id. at 1228 ("[P]rior pay itself is not a factor related to the work an employee is currently performing, nor is it probative of whether sex played any role in establishing an employee's pay."); _Irby v. Bittick_, 44 F.3d 949, 955 (11th Cir. 1995) (stating that allowing prior pay as an affirmative defense "would swallow up the rule and inequality in pay among genders would be perpetuated.").

## 4G.     FEDERAL EQUAL PAY ACT - *PRETEXT*

If you conclude that the Plaintiffs proved the elements of their EPA claim, and that Defendants proved they relied on a factor other than sex, you must finally consider whether the Defendants' justification is a "pretext."  A pretext is a "false or weak reason or motive advanced to hide the actual or strong reason or motive."[20]  If you conclude that Defendants' reason is false, you are allowed to conclude that it is false to cover up an illegal reason.[21]

If you conclude that Defendants' reason is pretextual, you must conclude that it failed to prove its affirmative defense.

---

[20] *Black's Law Dictionary (11th ed. 2019)* (Pretext defined as "[a] false or weak reason or motive advanced to hide the actual or strong reason or motive.").

[21] *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'"); *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 526 (2d Cir. 1992) (The plaintiff may counter the employer's claimed defenses "by offering evidence showing that the reasons sought to be proved are a pretext for sex discrimination.  The question, then, is whether the justifications advanced by the defendant were " 'used ... reasonably in light of the employer's stated purpose as well as other practices.'" *quoting Maxwell v. City of Tucson,* 803 F.2d 444, 446 (9th Cir.1986)).

**5.  CONNECTICUT EQUAL PAY ACT**

The Connecticut Equal Protection Act provides that "No employer shall discriminate in the amount of compensation paid to any employee on the basis of sex. Any difference in pay based on sex shall be deemed a discrimination within the meaning of this section."[22]  Employees bringing Connecticut EPA claims have to prove the same elements[23] as those bringing Federal EPA claims.  When deciding whether Defendants violated the Connecticut EPA, you should rely on the instructions I proved above regarding deciding the Federal EPA counts.[24]

The Connecticut EPA is worded differently, but is similarly, to the Federal EPA.  You should consider the instructions I gave above when determining whether the Defendants can prove their affirmative defense under the Connecticut EPA. Employers seeking to avoid liability under the Connecticut EPA have to prove that they relied on a "a differential system based upon a bona fide factor other than sex, such as education, training or experience.  Said bona fide factor defense shall apply only if the employer demonstrates that such factor (A) is not based upon or derived from a sex-based differential in compensation, and (B) is job-related and consistent with

---

[22] C.G.S. Sec. 31-75(a) ("No employer shall discriminate in the amount of compensation paid to any employee on the basis of sex. Any difference in pay based on sex shall be deemed a discrimination within the meaning of this section.").

[23] C.G.S. Sec. 31-75(b) ("If an employee can demonstrate that his or her employer discriminates on the basis of sex by paying wages to employees at the employer's business at a rate less than the rate at which the employer pays wages to employees of the opposite sex at such business for equal work on a job, the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions[.]")

[24] *Morse v. Pratt & Whitney,* No. 3:10-CV-01126 JCH, 2013 WL 255788, at *11 (D. Conn. Jan. 23, 2013) (Claims brought under the Connecticut Equal Pay Act are analyzed under the same standard as the Federal EPA.); *Paris-Purtle v. State*, 2015 WL 5622517, at *4 (Conn. Super. Ct. Aug. 14, 2015) ("Claims brought pursuant to the Connecticut Equal Pay Act are analyzed under the same standard as the Federal Equal Pay Act, 29 U.S.C. § 206(d).").

business necessity."[25]  Employers must show that the factor other than sex is bona fide, meaning

that the employer must prove that it was a "real, actual, genuine, and not feigned" factor that

resulted in the wage disparity.[26]

If the employer is able to prove its affirmative defense, like with the Federal EPA, you

should consider whether the Plaintiffs have proven that Defendants' justification is pretextual,

and not the true basis for its decision.

---

[25] *C.*G.S. Sec. 31-75(b) ("… such employer must demonstrate that such differential in pay is made pursuant to (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential system based upon a bona fide factor other than sex, such as education, training or experience.  Said bona fide factor defense shall apply only if the employer demonstrates that such factor (A) is not based upon or derived from a sex-based differential in compensation, and (B) is job-related and consistent with business necessity.")

[26] *Bona Fide, Black's Law Dictionary (11th ed. 2019)* ("1. Made in good faith; without fraud or deceit. 2. Sincere; genuine."); *In re Ross*, 63 B.R. 951, 960 (Bankr. S.D.N.Y. 1986) (defining *bona fide* as "[i]n or with good faith; honestly, openly, and sincerely; without deceit or fraud. Truly; actually; without simulation or pretense. Innocently; in the attitude of trust and confidence; without notice of fraud real, actual, genuine, and not feigned.") (quoting *Black's Law Dictionary* (Rev. 4th ed.)).

6.     **SEX DISCRIMINATION UNDER TITLE VII AND THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT**

Employers cannot discriminate against their employees in the terms and conditions of their employment, including compensation, by paying male employees more than female employees for the same work.  Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA") make it unlawful for an employer to discriminate against their female employees by paying higher wages to male employees who perform the same or equal work. Here, the Plaintiffs allege that Defendant NECS, Inc. discriminated against them based on their gender.  The Plaintiffs, all females, allege that Defendant NECS, Inc., impermissibly paid Mr. Londa, a male, more than it paid them for performing the same work.

In order to prove a violation of CFEPA and/or Title VII, the Plaintiffs must prove by a preponderance of the evidence that: (1) they were protected by the law; (2) they were employed by Defendant NECS, Inc; (3) they were qualified to perform their jobs; and (3) that they suffered an adverse job action – here that they were paid them less than Mr. Londa for the same work; and (5) that Defendant NECS, Inc.'s treatment of them was motivated, at least in part, because of their gender.[27]

---

[27] 42 U.S.C. § 2000e-2(m); *Lenzi* v. *Systemax, Inc.,* 944 F. 3d 97, 108 (2d Cir. 2019); *Naumovski* v. *Norris,*934 F. 3d 200, 213 (2d Cir. 2019);  *Walsh* v. *New York City Housing Authority,* 828 F. 3d 70, 78 (2d Cir. 2016);  *Vega* v. *Hempstead Union Free School District*, 801 F. 3d 72, 87 (2d Cir. 2015);*Holcomb* v. *Iona College*, 521 F. 3d 130, 139-140 (2d Cir. 2008); *Back* v. *Hastings on Hudson Union Free School Dist.*, 365 F. 3d 107, 124 (2d Cir. 2004); *Wills-Hingos* v. *The Raymond Corporation*, 104 Fed. Appx 773, 774 (2d Cir. 2004).

**6A.     SEX DISCRIMINATION IN VIOLATION OF CFEPA and TITLE VII – THE FIRST FACTOR**

In the present case, the Plaintiffs allege that they are members of a class protected by CFEPA and Title VII because they are women.  The parties do not dispute that the Plaintiffs are female.  Therefore, you must find in favor of the Plaintiffs on this first factor.

**6B.    SEX DISCRIMINATION IN VIOLATION OF CFEPA and TITLE VII – THE SECOND FACTOR**

For the second element, you must determine whether the Plaintiffs were employed by Defendant NECS, Inc.  The parties do not dispute that Defendant NECS, Inc. is Plaintiff's employer under Title VII or CFEPA. You must find the second prong in favor of Plaintiffs.

**6C.    SEX DISCRIMINATION IN VIOLATION OF CFEPA and TITLE VII – THE THIRD FACTOR**

Next, the Plaintiffs must prove by a preponderance of the evidence that they were qualified for the position that they held.  This means that the Plaintiffs must prove that they were capable of performing the duties of their position.  In this case, there is no dispute that the Plaintiffs were qualified to perform the duties they held at NECS.[28]

---

[28] *Naumovski* v. *Norris,* 934 F. 3d 200, 214 (2d Cir. 2019); *Walsh* v. *New York City Housing Authority,* 828 F. 3d 70, 75 (2d Cir. 2016); *Holcomb* v. *Iona College*, 521 F. 3d 130, 138 (2d Cir. 2008)

**6D.     SEX DISCRIMINATION IN VIOLATION OF CFEPA and TITLE VII – THE FOURTH FACTOR:  AN ADVERSE EMPLOYMENT ACTION**

Next, you must consider whether the Plaintiffs have proven by a preponderance of the evidence that they have suffered an adverse job action.  An adverse job action is any action that constitutes an adverse change in the terms and conditions of Plaintiffs' employment, such as hiring Mr. Londa and paying him more than the Plaintiffs for the same work. If the Plaintiffs prove by a preponderance of the evidence that the work that they and Mr. Londa performed is the same, then you must find that the Plaintiffs suffered an adverse job action.[29]

---

[29] *Naumovski* v. *Norris,* 934 F. 3d 200, 214 (2d Cir. 2019); *Walsh* v. *New York City Housing Authority,* 828 F. 3d 70, 75 (2d Cir. 2016); *Vega* v. *Hempstead Union Free School District*, 801 F. 3d 72, 88 (2d Cir. 2015); *Holcomb* v. *Iona College*, 521 F. 3d 130, 138 (2d Cir. 2008)

**6E.     SEX DISCRIMINATION IN VIOLATION OF CFEPA and TITLE VII – THE FIFTH FACTOR:  AN INFERENCE OF DISCRIMINATION**

Finally, Plaintiffs must prove by a preponderance of the evidence that NECS' decision to pay Londa a higher salary was made under circumstances giving rise to an inference that Plaintiffs' sex was a motivating factor in NECS's treatment of them with regard to their compensation.

Now, the Plaintiffs do not need to prove that their sex was the only factor in the Defendant's treatment of them, as long as it was a factor that motivated the Defendant or contributed to the Defendant's decision.  The Plaintiffs do not even have to prove that their sex was the principal factor in the decision.  A motivating factor is a factor that makes a difference in the Defendant's decision, played a part in the Defendant's decision or was a consideration that moved the Defendant toward that decision. In other words, you should find for the Plaintiffs if you conclude that their sex made a difference in Defendant's treatment of them. The Plaintiffs' sex may be one of a number of factors that motivates an employer's decision.  The Plaintiffs are entitled to prevail if they prove that their sex played a motivating role in, or contributed to, their treatment. [30]

---

[30] 42 U.S.C. § 2000e-2(m); *Lenzi* v. *Systemax, Inc.,* 944 F. 3d 97, 108 (2d Cir. 2019); *Naumovski* v. *Norris,* 934 F. 3d 200, 213 (2d Cir. 2019);  *Walsh* v. *New York City Housing Authority,* 828 F. 3d 70, 78 (2d Cir. 2016);  *Vega* v. *Hempstead Union Free School District*, 801 F. 3d 72, 87 (2d Cir. 2015); *Ferguson v. Fairfield Caterers, Inc.*, Case 3:11-cv-01558-JAM, ECF No. 167, *8-9 (Meyers, J) (jury instructions on prima facie case in similar discrimination claim); *Holcomb* v. *Iona College*, 521 F. 3d 130, 139-140 (2d Cir. 2008); *Back* v. *Hastings on Hudson Union Free School Dist.*, 365 F. 3d 107, 124 (2d Cir. 2004); *Wills-Hingos* v. *The Raymond Corporation*, 104 Fed. Appx 773, 774 (2d Cir. 2004); *Morse v. Pratt & Whitney*, 2013 WL 255788, at *4 (D. Conn. Jan. 23, 2013); *Belfi v. Prendergast,* 191 F.3d 129, 139 (2d Cir.1999)(In addition to the requirements that are generally the same as those under the EPA, 'a Title VII plaintiff must also produce evidence of discriminatory animus in order to make out a prima facie case of intentional sex-based salary discrimination); *Tomka* v. *Seiler Corp.,* 66 F.3d 1295, 1312 (2d Cir.1995)("A claim of unequal pay for equal work under Title VII ... is generally analyzed under the same standards used in an EPA [Equal Pay Act] claim.")

In determining motivation, you should consider that an intent or motive to violate the law is seldom admitted and can rarely be established by direct evidence. Intent to discriminate must often be proved circumstantially and may be inferred by the existence of other facts. In order to determine whether discrimination was a motivating factor, you should consider all of the evidence that may be available. Your job as jurors will be to analyze all of the facts and circumstances and to determine whether the Plaintiffs have proven that it is more likely than not that their sex was a motivating factor in NECS' treatment.

The Plaintiffs are not required to produce direct evidence that they were discriminated against because their sex. An intent to discriminate can be inferred from the existence of other facts – that is it may be proven through circumstantial evidence. Among the circumstantial evidence you can consider in order to determine whether NECS' intent or motive was discriminatory are the following: First the timing of events. The fact that there was a close connection in time between the Plaintiff Black's discrimination claim and the creation of the backdated Project Manager job description is one factor to consider. Second, the fact departures from normal procedures might be evidence that improper purposes are playing a role. A third factor which may be considered is the subjective nature of NECS' decision to pay Londa more than the Plaintiffs. The implausibility of the alleged reason may also be considered as circumstantial evidence of discrimination.

Finally, you may consider whether the reasons offered by the Defendant for its actions are believable or whether they are pretext for discrimination. A pretext is simply another word for a cover-up. If you find that the Defendant's reasons are not worth of belief, this alone may be sufficient to establish that the Defendant's actions were taken with a discriminatory motive. Resort to a pretextual explanation may itself by viewed as evidence that the Plaintiffs have

proven their case. In evaluation the evidence, you will be attempting to infer the Defendant's motivation, and resort to a pretextual explanation may itself be viewed as evidence indicating consciousness of guilt. If you find that the Defendant has provided a false explanation for the difference in pay between Londa and the Plaintiffs, the law allows, but does not require, you to conclude based on that fact alone that discrimination was a motivating factor in the Defendant's action. This is not to suggest that you should consider only the evidence, but that this evidence alone would be sufficient to allow you to conclude that the Plaintiff has proven his case.

However, it us up to you to decide whether, based upon all of the evidence presented, whether the Plaintiffs proven that it is more likely than not that the Defendant treated them with a discriminatory motive. In reaching your conclusion, you must remember that it is not your role to decide whether the Defendant treated the Plaintiffs fairly or unfairly.  You cannot find for the Plaintiffs simply because you feel sorry for them or to reward them for past service to the Defendant or because of some general feeling that they deserved better from their employer. Your sole responsibility is to decide whether the Plaintiffs were subjected to discrimination because their sex.

If you find that the Plaintiffs have proven that it is more likely than not that their sex was a motivating factor in Defendant's treatment of them, then your verdict should be for the Plaintiffs on this claim. If you find that the Plaintiffs have not proven by the preponderance of the evidence that Defendant acted with a discriminatory motive, then you must find for the Defendant on this claim.[31]

---

[31] *Reeves* v. *Sanderson Plumbing Products, Inc.* 530 U.S. 133, 143 (2000); *O'Connor* v. *Consolidated Coin Caterers Corp,* 517 U.S. 308, 116 S. CT. 1307 (1996); *Price Waterhouse* v. *Hopkins,* 490 U.S. 228, 250-2, 109 S. CT. 1775, 1791 (1989)(plurality opinion); *McDonnell Douglas Corp.* v. *Green,* 492 U.S. 792 (1973); *Rasmy* v. *Marriott International, Inc.* 952 F. 3d 379, 392-393 (2d Cir. 2020); *Kwan* v. *Andalex Grp., LLC,*  737 F. 3d 834 (2d Cir. 2013); *Holcomb v. Iona College*, 521 F.3d 130, 141 (2d Cir. 2008); *Tolbert* v. *Queens College*, 242 F.3d 58, 70 (2d Cir. 2001), *Byrnie* v. *Town of Cromwell*, 243 F.3d

7.     **RETALIATION AGAINST SHAWN DANIELSON UNDER THE**
**CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, THE**
**CONNECTICUT EQUAL PAY ACT AND THE FEDERAL EQUAL PAY ACT.**

Employers must not retaliate against female employees who claim that their employers discriminated against them because of their sex.  The Connecticut Fair Employment Practices Act expressly prohibit employers from firing or in any other manner discriminating because that employee has complained about sex discrimination.  The purpose of CFEPA's anti-retaliation provision is to ensure that employees are not afraid to complain about their employer's unlawful conduction. Ms. Danielson does not have to prove that Defendant's actions were motivated, at least in part, by her sex, in order to prevail on her claim of retaliation, as long as she had a good faith belief that Defendant's conduct violated the law.

There are  three factors that Ms. Danielson must prove by a preponderance of the evidence in order to make a claim for retaliation:  (1) Ms. Danielson must prove that  participated in a protected activity, known to the Defendant; (2) that she  suffered an adverse employment action; and (3)A causal connection between the protected activity and the adverse employment action motivated by her engaging in protected activity.

I will now instruct you on how to apply these three factors.

---

93 103-105 (2d Cir. 2001); *Banks v. Travelers,* 180 F.3d 358, 367 (2d Cir. 1999); *Danzer v. Norden Systems, Inc.,* 151 F.3d 50, 56-57 (2d Cir. 1998); *Norton v. Sam's Club,* 145 F.3d 114, 119 (2d Cir. 1998); *Stern* v. *Trustees of Columbia Univ.,* 131 F.3d 305, 313 (2d Cir.1997); *EEOC* v. *Ethan Allen, Inc.,* 44 F.3d 116, 120 (2d Cir. 1994); *Chambers* v. *TRM Copy Ctrs. Corp.*, 43 F. 3d 29, 37 (2d Cir. 1994); *Zahorik* v. *Cornell University*, 729 F.2d 85, 93 (2d Cir. 1984); *Maresco* v. *Evans Chandler*, 964 F2d. 106 (2d Cir. 1992).

**7A.     RETALIATION AGAINST SHAWN DANIELSON UNDER THE
CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, THE
CONNECTICUT EQUAL PAY ACT AND THE FEDERAL EQUAL PAY ACT –
THE FIRST FACTOR - PROTECTED ACTIVITY**

For the first element, you must consider whether Ms. Danielson engaged in protected

activity involving a complaint or objection about alleged unlawful discrimination relating to the

wage disparity. A "protected activity" includes any complaint or other objection to unlawful

discrimination – such as the filing of formal charges of wage discrimination and/or gender

discrimination, making informal complaints of such discrimination, opposing such

discrimination, or investigating such discrimination. A protected activity may involve not only a

complaint that arises from alleged discrimination against oneself but also a complaint that arises

from alleged discrimination against others. For example, I might complain that I was

discriminated against, or I might complain that my sister was discriminated against. Both my

complaints could be protected activity. Please note, however, that the term "protected activity"

does not include every kind of complaint or objection. For example, it does not include

complaints or protests about workplace conditions or demands or treatment of others that is not

related to discrimination.

For purposes of determining if there was "protected activity," you need not conclude that

the alleged discrimination that Ms. Danielson complained about actually occurred.

Ms. Danielson, however, must demonstrate that there were grounds to reasonably believe that the

employer had in fact engaged in conduct that violated the Equal Pay Act or the discrimination

laws. If a plaintiff had reasonable grounds to believe that there was unlawful discrimination

against herself, or a co-worker, then a complaint or objection to such alleged unlawful

discrimination qualifies as "protected activity."

29

Here, there is no dispute that Ms. Danielson complained about her compensation and ultimately on July 2, 2018 filed a claim of discrimination with the Commission on Human Rights and Opportunities, Connecticut's state agency that handles discrimination complaints. Therefore, I instruct you to find that Ms. Danielson has proven this first factor and engaged in protected activity.

**7B**     **RETALIATION AGAINST SHAWN DANIELSON UNDER THE
CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, THE
CONNECTICUT EQUAL PAY ACT AND THE FEDERAL EQUAL PAY ACT –
THE SECOND FACTOR - ADVERSE ACTION**

For the second element, Ms. Danielson must prove by a preponderance of the evidence
that Defendant NECS took a materially adverse action against her. A "materially adverse action"
is a harmful action of sufficient magnitude that, when viewed in context might well have
dissuaded a reasonable person from making or supporting a charge of discrimination.
Unwarranted discipline can be a materially adverse job action and a termination of an
individuals' employment can certainly be a materially adverse action. Here, there is no question
that Ms. Danielson was fired by NECS on August 17, 2018.

**7C      RETALIATION AGAINST SHAWN DANIELSON UNDER THE
CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, THE
CONNECTICUT EQUAL PAY ACT AND THE FEDERAL EQUAL PAY ACT –
THE THIRD FACTOR – CAUSAL CONNECTION**

Now, you must consider whether Ms. Danielson has proven by a preponderance of the
evidence that she was terminated under circumstances giving rise to an inference of retaliation.
In determining whether Ms. Danielson was retaliated against under the Connecticut Fair
Employment Practices Act, and/or the Connecticut or Federal Equal Pay, you must apply the
same analysis that you applied to the Plaintiffs' claim for sex discrimination that I discussed
earlier; you must consider whether Ms. Danielson has  proven by the preponderance of the
evidence that she were terminated under circumstances giving rise to an inference that her
protected activity was a motivating factor in NECS's treatment of her with regard to her
compensation.

Ms. Danielson does not need to prove that her protected activity was the only factor in
the Defendants' treatment of them, as long as it was a factor that motivated the Defendants or
contributed to the Defendants' decision.  Ms. Danielson does not even have to prove that their
sex was the principal factor in the decision.  A motivating factor is a factor that makes a
difference in the Defendants' decision, played a part in the Defendants' decision or was a
consideration that moved the Defendants toward that decision. In other words, you should find
for the Plaintiff if you conclude that her protected activity made a difference in Defendants'
treatment of her. The Plaintiff's protected activity may be one of a number of factors that
motivates an employer's decision.  Ms. Danielson is entitled to prevail if she proves that her
protected played a motivating role in, or contributed to, her treatment. [32]

---

[32] 42 U.S.C. § 2000e-2(m); *Lenzi* v. *Systemax, Inc.,* 944 F. 3d 97, 108 (2d Cir. 2019); *Naumovski* v. *Norris,*934 F. 3d 200, 213 (2d Cir. 2019);  *Walsh* v. *New York City Housing Authority,* 828 F. 3d 70, 78 (2d Cir. 2016);  *Vega* v. *Hempstead Union Free School District,* 801 F. 3d 72, 87 (2d Cir. 2015); *Esmilla*

Ms. Danielson has also alleged retaliation in violation of Title VII of the Civil Rights Act of 1964.  The standard of proving a claim of retaliation under this law now diverges from the analysis discussed above.  In determining whether or not Ms. Danielson was retaliated against, under Title VII, you must apply a different analysis that I explained to you with respect to these claims.  Under this specific law, Ms. Danielson must prove that the Defendants retaliated against her because of her protected activity.[33]  "But for" does not mean that Ms. Danielson must prove that protected activity status was the **only** reason for his treatment. There can be more than one "but for" causes.  An example that the Supreme Court has used is this: if a car accident occurred both because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, each could be but for causes of the accident.[34]  Here, Ms. Danielson only has to prove that the adverse actions she claims are retaliatory would not have occurred in the absence

---

v. *Cosmopolitan Club*, 936 F. Supp. 2d 229 (S.D.N.Y. 2013) *Ferguson v. Fairfield Caterers, Inc.*, Case 3:11-cv-01558-JAM, ECF No. 167, *8-9 (Meyers, J) (jury instructions on prima facie case in similar discrimination claim); *Holcomb* v. *Iona College*, 521 F. 3d 130, 139-140 (2d Cir. 2008); *Back* v. *Hastings on Hudson Union Free School Dist.*, 365 F. 3d 107, 124 (2d Cir. 2004); *Wills-Hingos* v. *The Raymond Corporation*, 104 Fed. Appx 773, 774 (2d Cir. 2004); *Morse v. Pratt & Whitney*, 2013 WL 255788, at *4 (D. Conn. Jan. 23, 2013); *Belfi v. Prendergast,* 191 F.3d 129, 139 (2d Cir.1999)(In addition to the requirements that are generally the same as those under the EPA, 'a Title VII plaintiff must also produce evidence of discriminatory animus in order to make out a prima facie case of intentional sex-based salary discrimination); *Tomka* v. *Seiler Corp.,* 66 F.3d 1295, 1312 (2d Cir.1995)("A claim of unequal pay for equal work under Title VII ... is generally analyzed under the same standards used in an EPA [Equal Pay Act] claim.").

[33] 42 U.S.C. § 12102(1); *Natofsky* v. *City of New York*, 921 F. 3d 337, 346 (2d Cir. 2019); *Brady* v. *Wal-Mart Stores, Inc.* 531 F. 3d 127, 134 (2d Cir. 2008); *Rubin* v. *ADT, LLC,* 2019 WL 4366545 (D. Conn. Sept. 12, 2019); *Sullivan* v. *Quest Diagnostics, LLC,* 2018 U.S. Dist. LEXIS 27929, *29 (D. Conn. Feb. 21, 2018); *Kelly* v. *Covenant Homes, Inc.,* 2018 U.S. Dist. LEXIS 120240, *20 (D. Conn. July 19, 2018); Hatch v. *Brennan,* 2018 U.S. Dist. LEXIS 117304, *15 (D. Conn. July 13, 2018); *Percoco* v. *Lowe's Home Ctrs., LLC,* 2015 U.S. Dist LEXIS 112012, *5-6 (D. Conn. August 25, 2015); *Szabo* v. *City of Torrington,* 2015 U.S. Dist. LEXIS 63467, *6-7 (D. Conn. March 14, 2015)**;** *Singleton* v. *UPS,* 2014 U.S. Dist LEXIS 31409, *4-5 (D. Conn. Mar. 11, 2014).

[34] *Bostock* v. *Clayton County, Georgia,*  -- U.S. --, 140 S. Ct. 1731, 1739 (2020); *Gross* v. *FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 174 L. Ed. 2d 119; *University of Texas Southwestern Medical Center* v. *Nassar*, 570 U.S. 338, 133 S. Ct. 2517 (2013); Natofsky v. *City of New York*, 921 F. 3d 337, 346 (2d Cir. 2019); *Zann Kwan* v. *Andalex Group, LLC*, 737 F. 3d 834, 845-6 (2d Cir. 2013).

of her protected activity. Even if other factors contributed to the Defendants' decision-making, Ms. Danielson has met her burden if she can show that her protected activity was the fact that made a difference in the Defendant's decision-making.

As I instructed you with regard to the Plaintiffs' discrimination claims, Ms. Danielson is not required to produce direct evidence that she was retaliated against because of her protected activity. An intent to discriminate can be inferred from the existence of other facts – that is it may be proven through circumstantial evidence. Again, if you find the Defendants' reasons are not worthy of believe, this alone may be sufficient to establish that Defendants' actions were taken with a retaliatory motive. Resort to a pretextual explanation may be viewed as evidence of retaliation.  This does not mean that you must view the Defendant's explanation in any particular way. It is your role as a jury to analyze all of the facts and circumstances and to determine, based upon this evidence, whether the Defendants' retaliated against Ms. Danielson because of her protected activity.[35]

---

[35] *29 U.S.C.A. § 215(a)(3)* ("to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee") *Trans World Airlines v. Thurston*, 469 U.S. 111, 121, 105 S. Ct. 613 (1985); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973);  *Rasmy* v. *Marriott International, Inc.* 952 F. 3d 379, 392-393 (2d Cir. 2020); *Kwan v. Andalex Grp., LLC,* 737 F. 3d 834 (2d Cir. 2013); *Ferguson v. Fairfield Caterers, Inc.*, Case 3:11-cv-01558-JAM, ECF No. 167, *8-14 (Meyers, J) (jury instructions on prima facie case in similar discrimination & retaliation claim); *Wolinsky* v. *Standard Oil of Connecticut, Inc.*, 712 F. Supp. 2d 46, 57 (D. Conn. 2010) (applying motivating factor standard in FLSA retaliation claim to deny summary judgment);  *Holcomb* v. *Iona College*, 521 F. 3d 130, 141 (2d Cir. 2008); *Tolbert* v. *Queens College*, 242 F.3d 58, 70 (2d Cir. 2001), *Byrnie* v. *Town of Cromwell*, 243 F.3d 93 103-105 (2d Cir. 2001); *Carlton* v. *Mystic Transp. Inc.* 202 F.3d 129, 135 (2d Cir. 2000); *Banks* v. *Travelers,* 180 F.3d 358, 367 (2d Cir. 1999); *Danzer* v. *Norden Systems, Inc.,* 151 F.3d 50, 56-57 (2d Cir. 1998); *Norton* v. *Sam's Club,* 145 F.3d 114, 119 (2d Cir. 1998); *EEOC* v. *Ethan Allen, Inc.,* 44 F.3d 116, 120 (2d Cir. 1994); *Hatch* v. *Brennan,* 2018 U.S. Dist. LEXIS 117304, *15 (D. Conn. July 13, 2018).

**8A.    DEFAMATION - ELEMENTS**

The plaintiffs allege that they were defamed by the defendant. Slander is a form of oral defamation of character. The plaintiff's claim in this case is based on slander. A defamatory statement is a false communication that tends to harm the reputation of another; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held; to deter third persons from associating or dealing with her; or to excite adverse, derogatory, or unpleasant feelings or opinions against her. Statements claimed to be defamatory should be given their ordinary meaning, which is the same meaning that people of common and reasonable understanding would give to them in the context and under all the circumstances that were present at the time they were made. In determining whether a statement is defamatory, you are not bound by the interpretation of the statement offered by the plaintiff, the defendant or by any person hearing the statement. If the meaning of the statement is unclear, it is your job as the jury to determine what the meaning of the statement was.

To establish a case of defamation, the plaintiff must prove the following: 1) the defendant published a defamatory statement to a third person; 2) the defamatory statement identified the plaintiff to a third person; and 3) the plaintiff's reputation suffered injury as a result of the statement. Publication means to make a statement to another orally, in writing, or by some other means of communication. The publication of the defamatory information can be done intentionally or negligently, so long as it is done in a manner such that in the ordinary course of events it will come to be communicated to a third person.

The plaintiffs in this case are seeking to recover damages for slander. Slander is the speaking of defamatory words which injure the reputation of the person defamed or which deter people from associating with or dealing with the person defamed. In most cases, a plaintiff must

prove actual injury to her reputation in order to recover in an action for slander. Actual injury must be proven unless the slander occurred in one of the categories called slander per se.

If a statement is slanderous per se, a person is entitled to recover for general damages to her reputation without having to prove that actual damage was caused by the statements. This is because the law conclusively presumes that these statements cause injury to a person's reputation. Plaintiffs allege that some of the statements Mr. Anatra made about each of them constitutes slander *per se*.  Specifically, you have heard evidence that Mr. Anatra called each of them a liar in some form relating to their allegations of wage discrimination.

If you find that the plaintiffs have proven, by a preponderance of the evidence, that the defendant made these statement to a third person, which identified the plaintiffs, such that it would be reasonably understood that it was about the plaintiffs, then this would be slander per se because Connecticut law considers being called a "liar" is slander *per se*.[36]

---

[36] Connecticut Model Civil Jury Instructions 3:11-1' Connecticut Model Civil Jury Instructions 3.11-5; *Cohen v. Meyers*, 2015 Conn. Super. LEXIS 2853, *52 (Conn. Super. Ct. Nov. 12, 2015) (statements that a person was a "liar" constitute charges of "improper conduct or lack of skill or integrity in his profession or business"); *Harrington v. Wilber*, 353 F. Supp. 2d 1033, 1040 (S.D. Iowa 2005) ("It has long been accepted that accusing a person of being a liar constitutes defamation per se."); *Pierson v. Nat'l Inst. for Labor Rels*. Research, 319 F. Supp. 3d 1100, 1106-1107 (N.D. Ind. 2018) (court denied motion to dismiss defamation per se count where plaintiff alleged that defendants accused him of "flat-out l[ying]" to the Indiana Supreme Court" because the statement "impugns [plaintiff's] professional reputation by accusing him of violating his ethical obligations as an officer of the court."); *Zello v. Birk*, 2011 Conn. Super. LEXIS 1813, *8-11 (Conn. Super. Ct. July 15, 2011) (defendant committed libel per se when she wrote a letter calling the plaintiff a liar and unprofessional because it charged the plaintiff with improper conduct and a lack of integrity and committed slander per se when she discussed the letter with another person because it is easy to assume she charged the plaintiff with general incompetence).

36

**8B.    DEFAMATION - OPINION**

"Under Connecticut law, statements of opinion generally cannot serve as the basis of a defamation claim."  "To be actionable, the statement must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion."  "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known."  "An opinion, on the other hand, is a personal *comment* about another's conduct, qualifications or character that has some basis in fact.  In determining whether Mr. Anatra's statements are "fact" or "opinion" you should consider the following factors:  (1) the context and circumstances (2) the language used, and (3) whether the statement is objectively capable of being proved true or false.'"

When a statement is "objectively capable" of being proven either true or false, it is less likely to constitute an "opinion."  When a statement is clearly speculative, it is more likely to constitute an opinion.  Where a statement in the form of an opinion implies the existence of undisclosed defamatory facts as the basis for the opinion, the statement will be actionable.[37]

---

[37] *Daley* v. *Aetna Life and Casualty Co*., 249 Conn. 766, 795 (1999) (""To be actionable, the statement must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion."); *Goodrich v. Waterbury Repub.-Am., Inc*., 188 Conn. 107, 111 (1982) ("A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known. An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact."); *Held v. Scott Silver & Silver Assocs.*, 2013 U.S. Dist. LEXIS 148514, *25 (D. Conn. Oct. 16, 2013) ("Under Connecticut law, statements of opinion generally cannot serve as the basis of a defamation claim.") Id. at *27 (Where a statement in the form of an opinion implies the existence of undisclosed defamatory facts as the basis for the opinion, the statement will be actionable). Id. at *31 (concluding that the statement that the defendant "will clearly burn anyone else if he wants to which he did with me" as "clearly speculative and therefore a statement of opinion."); *Johnson v. Schmitz*, 119 F.Sup.2d 90, 101 (D. Conn. 2000) (Courts rely on several factors in determining whether a statement is an opinion or a fact. "In determining what type of statement is at issue, 'a court may consider (1) the context and circumstances (2) the language used, and (3) whether the statement is objectively capable of being proved true or false.'"); *Perruccio v. Arseneault*, 7 Conn. App. 389, 394 (1986) (when a statement is "objectively capable" of being proven either true or false, it is less likely to constitute an "opinion.")

**8C.    DEFAMATION - QUALIFIED PRIVILEGE**

The burden is on the plaintiffs to prove that the Defendant make the defamatory

statements about them.  Even if the plaintiffs prove that the statements were made about them,

the defendants claim that they are not liable because they had a right to make those statements.

Under certain conditions, a person will not be liable for making a defamatory statement if that

person had a privilege to make the statement.  In this case, Defendants claim that Mr. Anatra had

a "qualified privilege" to make the statements he made about the Plaintiffs.

In some circumstances, otherwise defamatory statements made by an employer about an

employee are protected by a "qualified privilege."  The employers' "qualified privilege" applies

to "communications between managers regarding the review of an employee's job performance

and the preparation of documents regarding an employee's termination[.]"  The reason that these

types of communications and documents can be protected by a privilege is because they are

necessary "to effectuate the interests of the employer in efficiently managing its business."

The essential elements that Defendants must prove to establish that a qualified privilege

exists are (1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3)

good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only.

If an employer does establish that its statements are subject to the qualified privilege, it

can lose that protection if the defamatory communications exceed those necessary to protect the

employer's legitimate interests.  Employers lose their qualified privilege *"if the defamatory*

communication is addressed to a party whose knowledge of the matter is not reasonably believed

to be necessary to protect the defendant's interest or if the content of the publication is

excessive."  If an employer publishes a defamatory statement to a person to whom its publication

is not otherwise privileged, the employer abuses the privilege and loses it unless the employer

proves that it "reasonably believes that the publication is a proper means of communicating the defamatory matter to the person to whom its publication is privileged."

Also, if a qualified privilege does apply to statements, "it may be defeated if it can be established that the holder of the privilege acted with malice in publishing the defamatory material."  "[M]alice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive."  "[Q]ualified privilege is lost upon a showing of *either* actual malice, i.e., publication of a false statement with actual knowledge of its falsity or reckless disregard for its truth, *or* malice in fact, i.e., publication of a false statement with bad faith or improper motive."

Finally, the qualified immunity privilege does not apply when the employer defames an employee that no longer works for the employer.  The privilege only applies where the employer proves the defamatory statement or publication occurs during the review of an employee's job performance or when the employer is preparing documents relating to an employee's termination.[38]

---

[38] Restatement 2d of Torts, § 604 ("One who, upon an occasion giving rise to a conditional privilege for the publication of defamatory matter to a particular person or persons, knowingly publishes the matter to a person to whom its publication is not otherwise privileged, abuses the privilege unless he reasonably believes that the publication is a proper means of communicating the defamatory matter to the person to whom its publication is privileged"); *Bleich* v. *Ortiz*, 196 Conn. 498, 504 (1985) ("An assertion of conditional privilege also fails if the defamatory communication is addressed to a party whose knowledge of the matter is not reasonably believed to be necessary to protect the defendant's interest or if the content of the publication is excessive"); *Gambardella* v. *Apple Health Care, Inc*., 291 Conn. 620, 628 (2009) ("If a qualified privilege does apply to statements, it may be defeated if it can be established that the holder of the privilege acted with malice in publishing the defamatory material. Malice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive. Qualified privilege is lost upon a showing of either actual malice, i.e., publication of a false statement with actual knowledge of its falsity or reckless disregard for its truth, or malice in fact, i.e., publication of a false statement with bad faith or improper motive") (internal citations and alterations omitted); *Miles* v. *Perry*, 11 Conn. App. 584, 595 (1987) (Courts examine several factors when determining whether a qualified privilege exists; the essential elements are (1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only); *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc*., 234 Conn. 1, 29 (1995) (emphasis added) ("[C]ommunications between managers regarding the review of an employee's job

9.      **DAMAGES – ECONOMIC LOSSES**

If you find that the Defendants violated the Federal or Connecticut Equal Pay Act, the Connecticut Fair Employment Practices Act or Title VII of the Civil Rights Act of 1964, they are liable to the Plaintiffs for the economic harm they have suffered. Plaintiffs Black, Platt, and Danielson seek a monetary award of back pay under each of these laws.  The purpose of damages for lost income or "back pay" is to compensate the Plaintiffs for the economic injury that resulted from Defendants' decision to pay Mr. Londa higher wages for equal work.  An award for back pay may include lost wages calculated as the difference between Mr. Londa's wages and each of the Plaintiff's wages during the weeks they worked together. The damages that you award must be fair compensation, no more; no less.

Plaintiff Shawn Danielson has an additional claim for back pay because she is also suing for retaliation for exercising her rights under each of these laws.  If you find that Defendants retaliated against Danielson under any or all of those laws, you may award Danielson back pay. An award for back pay to Danielson due to retaliation may include lost wages as calculated from the date of her termination through the date of judgment in this case minus any amount of earnings or benefits Danielson received from other sources during that time.

If you find that the Defendants violated more than one of these laws, and that the Plaintiffs suffered economic losses as a result of this, you must determine the amount of such losses even if you have also determined an award of economic losses for a different violation. Do not be concerned that you may be compensating him twice for the same economic injury. That is

---

performance and the preparation of documents regarding an employee's termination are protected by a qualified privilege. Such communications and documents are necessary to effectuate the interests of the employer in efficiently managing its business")

something for the Court to address. That is not to say that I am suggesting that you should find any particular way as to these matters – that is for you to determine. [39]

---

[39] See *Carey* v. *Piphus*, 435 U.S. 247, 98 S. Ct. 1042 (1978); *Albemarle Paper Co.* v. *Moody*, 422 U.S. 405, 418-419, 95 S. Ct. 22362, 2372 (1975); *Bernheim* v. *Litt*, 709 F. 3d 318, 325-6 (2d Cir. 1996); *Sands* v. *Runyon*, 28 F. 3d 1323, 1327 (2d Cir. 1994); *Thurston* v. *TWA*, 713 F. 2d 940, 956 (2d Cir. 1983), aff'd in part 469 U.S. 111 (1985); Modern Federal Jury Instructions, §104.0687-87; *Devitt, Blackmar & Wolff*, Federal Jury Practice Instructions (1987) Vol. 3 Civil (1995 Pocket Part) § 104.06, p. 164; *Hannah* v. *Walmart Stores*, Inc., 803 F. App'x 417, 423 (2d Cir. 2000)

**10.** **MITIGATION OF DAMAGES AS TO PLAINTIFF DANIELSON[40]**

Even if you find that the Defendant, by its actions, has harmed Plaintiff Danielson, the Plaintiff is also obligated to use reasonable care to minimize the resulting losses and damages caused by the Defendant's actions. A person who is damaged as a result of wrongful conduct by another has a duty under the law to use reasonable efforts to mitigate her damages. The obligation to mitigate damages, however, is not an onerous one. An employee need not go into another line of work, accept a demotion or take a demeaning position.

The Plaintiff does not have to prove the preponderance of the evidence that she used reasonable care to minimize her losses. Instead in this instance, the burden is on the Defendant to prove, by a preponderance of the evidence, that the Plaintiff has *not* satisfied her duty to mitigate her damages.[41]  For you to find the Plaintiff failed to minimize or mitigate her damages, the Defendant must prove two things to you with regard to Ms. Danielson:

(1) Defendants must prove that Danielson did not use reasonable diligence in seeking employment. A Plaintiff fails to use reasonable diligence when she could have sought employment at the same or comparable salary level and did not; and

(2) The Defendants must also prove to you that if Ms. Danielson  had exercised such diligence, there was a reasonable likelihood that she would have found comparable work. This

---

[40] The Plaintiff does not believe that the evidence in this case is sufficient to support a finding that he failed to mitigate his damages and therefore no jury charge should be given on this subject. This proposed jury instruction is being provided for consideration only in the event that the Court disagrees and determines that sufficient evidence exists to submit the failure to mitigate defense to the jury. See *Weber* v. *Fujifilm Medical Systems*, 3:10-cv-00401(JBA), Dkt. [469] (D. Conn. June 5, 2012) (no instruction on mitigation defense given).

[41] *Wills-Hingos* v. *Raymond Corp.*, 104 F. App'x 773 (2d Cir. 2004); *Evarts* v. *Quinnipiac Univ.*, No. 3:15-CV-1509 (CSH), 2017 WL 6453396, at *3 (D. Conn. Dec. 10, 2017).

prong requires Defendants to produce evidence that there were comparable jobs available that Danielson could have taken but failed to apply for.[42]

Only if you find that the Defendant has proven both that the Plaintiff failed to look for comparable work **and** that the Plaintiff could have found comparable work if she had looked for it, may you find that the Plaintiff failed to mitigate her damages. If you find that the Plaintiff could have obtained comparable employment if she continued to look and that she unreasonably failed to do so, then you should deny recovery for the period of time after which she stopped looking because she would have failed to mitigate her damages with regard to that time period.

If you find that there were substantially equivalent positions available to Ms. Danielson, that she did not take reasonable steps to minimize her damages, and that if she had taken such steps she would have found a substantially equivalent position then you may reduce the total damages by the amount you believe they would have been reduced had the Plaintiff taken such steps. In deciding whether to reduce Ms. Danielson's damages due to a failure to mitigate, you should weigh all the evidence in the case. If a failure to mitigate damages has been proven, you may consider that failure in determining the amount of damages that should be paid.[43]

Even if an employee fails to mitigate damages entirely, she may still be entitled to some amount of backpay damages. An employee who has failed to mitigate may still recover limited damages if the total compensation received from comparable employment would have been less

---

[42] *Wills-Hingos*, 104 F. App'x at 776 (upholding jury finding that defendant failed to prove affirmative defense where it "offered no evidence as to the availability of comparable jobs").

[43] *Ford Motor Co.* v. *EEOC*, 458 U.S. 219, 231, 102 S. Ct. 3057, 3065 (1982); *Hawkins* v. *1115 Legal Service Care*, 163 F. 3d 684, 695-696 (2d Cir. 1998); *Dailey* v. *Societe Generale*,108 F. 3d 451, 456 (2d Cir. 1997); *Clarke* v. *Frank*, 960 F. 2d 1146, 1152 (2d Cir. 1992).

than what [the employee] received from the defendant.[44]  It is in the jury's discretion to make

this determination.

---

[44] *Walsh* v. *Scarsdale Union Free Sch. Dist.*, No. 16 CIV. 3558 (NSR), 2019 WL 6789581, at *5
(S.D.N.Y. Dec. 12, 2019)

**11.    LIQUIDATED DAMAGES (FEDERAL EQUAL PAY ACT)**

In addition to back pay, any employer who violates the provision of the Federal Equal Pay Act shall be liable to the employee or employees affected.  The employer shall be liable to those employees for the amount of the wage disparity (i.e., back pay) and an additional equal amount in liquidated damages.  When our Congress passed the Fair Labor Standards Act, which the EPA is a part of, it provided for liquidated damages "as a means of compensating employees 'for losses they might suffer by reason of not receiving their lawful wage at the time it was due.'" "Liquidated damages under the FLSA are considered compensatory rather than punitive in nature."  I will instruct you about punitive damages in a few moments.

If an employee wins under the EPA, liquidated damages are automatic unless an employer can prove that its failure to comply with the law was done in good faith.  This is known as a "good faith" defense.  To avoid liquidated damages via a "good faith" defense, an employer has "the 'difficult' burden of establishing, by "plain and substantial" evidence, both that it acted in 'subjective good faith' and that it had objectively reasonably grounds for believing the wage disparity did not violate the law.  Indeed, liquidated damages are the norm, and proving good faith is the exception.

The good faith defense has two components: subjective good faith and objective reasonableness.  First, the employer must prove that it sincerely believed the wage disparity complied with the law.  Second, the employer must prove that its "subjective belief" was "objectively reasonable." The law requires an employer to come forward with substantial evidence that it attempted to learn the requirements of the EPA, and then took active steps to comply with it.  An employer cannot prove good faith simply by claiming that it believed its

procedures complied with the law. An employer does not prove good faith simply claiming that it did not violate the EPA on purpose.

If you find that Defendants failed to prove their good faith defense under the Federal EPA as I have described it, you must enter an award of liquidated damages equal to the amount of back pay you award.[45]

---

[45] 29 U.S.C.A. § 216 (b) ("Any employer who violates the provisions of section 206 [the EPA – Sec. 206(d)]or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."); 29 U.S.C.A. § 260 ("In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title."); *Brock* v. *Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) ("The burden is a difficult one to meet, however, and "double damages are the norm, single damages the exception."); *Herman* v. *RSR Sec. Servs*., 172 F.3d 132, 142 (2d Cir. 1999) ("The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception."); *Reich* v. *S. New England Telecommunications Corp*., 121 F.3d 58, 70 n. 4 (2d Cir. 1997) ("Congress provided for liquidated damages as a means of compensating employees "for losses they might suffer by reason of not receiving their lawful wage at the time it was due."  *Martin* v. *Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir.1991)); id. at 71 ("Liquidated damages under the FLSA are considered compensatory rather than punitive in nature. … "Good faith" in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them. See *Cooper Elec*., 940 F.2d at 908. See also *Williams* v. *Tri–County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir.1984). That SNET did not purposefully violate the provisions of the FLSA is not sufficient to establish that it acted in good faith.")

12.     **COMPENSATORY DAMAGES (CONN EPA, TITLE VII, CFEPA)**

Employees who prevail on claims of discrimination under Title VII, the Connecticut Fair

Employment Practices Act, and Connecticut's Equal Pay Act can be awarded compensatory

damages.  It is important to note that employees cannot recover compensatory damages under the

Federal Equal Pay Act.

If you find for the Plaintiffs on any of these claims, then you must then decide the amount

of damages that will reasonably and fairly compensate them for any harm proximately caused by

Defendants' unlawful actions. These damages are known as compensatory damages.

Compensatory damages seek to make the plaintiff whole – that is, to compensate for the losses or

injuries suffered. To award compensatory damages, you must find by a preponderance of the

evidence that unlawful conduct by Defendants was a proximate cause of those damages. An act

is a proximate cause if it was a substantial factor in bringing about the plaintiff's injury, and if

the injury was a reasonably foreseeable consequence of the defendant's conduct. An injury that

is a direct result, or a reasonable probable consequence of a defendant's conduct, was

proximately caused by that conduct. Non-economic damages are monies awarded for non-

monetary losses that the plaintiff suffered, or is reasonably likely to suffer in the future, as a

result of the defendant's unlawful conduct, including physical, mental, and emotional pain and

suffering, humiliation, injury to reputation, anxiety, loss of enjoyment of life, and/or anguish.

No evidence of the monetary value of such intangible things as emotional pain and suffering

need be introduced into evidence. Nor must plaintiffs prove the amount of their losses with

mathematical precision, but only with as much definiteness and accuracy as circumstances

permit. There is no exact standard for setting the amount to be awarded for these kinds of

damages. Instead, any award you make should be fair and reasonable in light of all of the

evidence presented at trial, and should be guided by common sense, not bias, passion, sympathy, speculation, or guesswork. You must use your best judgment, remembering always that it is incumbent upon plaintiffs to prove by a preponderance of the evidence that they suffered damages and the amount of damages to which you may decide to award. Counsel may have stated a certain sum of money that they think you should award, but that argument is not evidence, and the award of damages is within your discretion.[46]

---

[46] See *Vera* v. *Alstom Power Inc*., Case No. 3:12-cv-00382-VAB, ECF No. 124 *12-13 (May 18, 2015) (Bolden, J) (jury charge on compensatory damages)

**13.      PUNITIVE DAMAGES (CFEPA, CONN EPA)**

Plaintiffs seeks another measure of damages called punitive damages. The purpose of an award of punitive damages is to punish a wrongdoer for misconduct, and also to deter others from engaging in similar misconduct.

You may award punitive damages for a violation of Title VII, and CFEPA. Accordingly, you may, but are not required to award punitive damages only if you find that Defendant NECS, Inc. violated these two laws, and in doing so, acted with malice or reckless indifference to Plaintiffs' rights under Title VII and CFEPA. To find that NECS acted with the required state of mind, you must find, at a minimum, that NECS discriminated and/or retaliated against Plaintiffs in the face of a perceived risk that its actions would violate the law.

You may award punitive damages for a violation of Connecticut's Equal Pay Act. Accordingly, you may, but are not required to, award punitive damages only if you find that Defendants NECS, Inc. and/or Chris Anatra violated the EPA either intentionally or with reckless indifference to the Plaintiffs' rights.

If you find that punitive damages are appropriate, you must decide upon the amount of punitive damages to award. There is no exact standard for fixing the amount of punitive damages. In deciding the amount of punitive damages, you may consider the offensiveness or reprehensibility of the conduct, the amount needed to deter the defendant or persons like the defendant from repeating the conduct, and the degree to which the defendant should be punished. An award of punitive damages should not reflect bias, prejudice, or sympathy with respect to any party. It must instead be fairly based on the evidence, sound reason, and the general purposes underlying punitive damages as I have explained them to you.[47]

---

[47] C.G.S. Sec. 31-76(a) (…"if the violation is found to be intentional or committed with reckless indifference to the employee's or employees' rights under section 31-75, punitive damages."); *Vera* v.

---

*Alstom Power Inc.,* Case No. 3:12-cv-00382-VAB, ECF No. 124 *14 (May 18, 2015) (Bolden, J) (jury charge on punitive damages)

**14.     GENERAL AND SPECIAL DAMAGES – SLANDER PER SE**

If you conclude that the Defendants defamed the Plaintiffs you may award "general" damages to them to compensate them for the harm caused by the defamation.  In determining the amount of general damages to award for the injury to the plaintiff's reputation, you should consider what reputation the plaintiff had in the community when the statement was made. You should consider all of the circumstances surrounding the making of the statement. You may also compensate the plaintiff for damages that she will likely incur in the future. These damages can include additional damage to her reputation that occurs as a result of the bringing of this lawsuit.

In addition to general damages awarded for the injury to the plaintiff's reputation, you may also award the plaintiff what are called "special" damages, or damages for economic loss. To recover special damages, however, the plaintiff must prove that she suffered economic loss that was legally caused by the publication of the defendant's defamatory statement even where the defamation is slander per se.

 General and special damages together comprise what are called compensatory damages, or damages that compensate the plaintiff for her loss. If you find that the plaintiff has suffered a violation of her legal rights but she has not suffered an actual injury, she is entitled at least to nominal damages. Nominal damages may be awarded because you find that the defamatory material is of an insignificant character, or because you find that the plaintiff had a bad character, so that no substantial harm has been done to the plaintiff's reputation, or there is no proof that serious harm has been done to the plaintiff's reputation. Nominal damages are also awarded when they are the only damages claimed and the action is brought for the purpose of vindicating the plaintiff's character by a jury verdict that establishes that the defamatory material was false.

Punitive damages, which in Connecticut are limited to attorney's fees and expenses, may also be awarded. Punitive damages may be awarded if you find that the defendant's actions in this case were willful, wanton or malicious, as I have defined them earlier. These damages, however, are not awarded as a matter of right, but rather as a matter of discretion, to be determined by you after you consider all of the evidence. Both nominal and punitive damages also may be awarded where the defamatory material is slander per se.

To summarize, if the defamatory material is slander per se, the plaintiff is entitled to an award of general damages for injury to reputation without proof of monetary loss, and an award of special damages upon proof of actual injury or loss. You may award punitive damages as a matter of discretion. At a minimum, where slander per se has been established, a plaintiff should receive a small amount of nominal damages of at least one dollar.[48]

---

[48] Connecticut Civil Jury Instructions 3:11-8 (Damages for Libel/Slander Per Se)

**15.    PREJUDMENT INTEREST**

If you find that the Plaintiff is entitled to an award of damages for his economic losses, you should award interest to the Plaintiff on such damages as you have determined. Interest may be awarded to compensate a Plaintiff for the loss of use of money which was not paid when due. Given that the purpose of back pay is to make the Plaintiff whole, you may find it necessary to award interest to compensate Plaintiff for the loss of the benefit of his back pay to date.[49]

---

[49] *E.E.O.C.* v. *O'Grady*, 857 F.2d 383, 391-92 (7th Cir. 1988); *E.E.O.C.* v. *Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 578-79 (6th Cir. 1984).

**PLAINTIFFS, Patricia Black, Shawn Danielson, and Ashley Platt**


By:      */s/  Thomas J. Durkin*
           Attorney Deborah L. McKenna (ct 17326)
           Attorney Thomas J. Durkin (ct30371)
           Hayber, McKenna & Dinsmore, LLC
           900 Chapel Street, 11th Floor
           New Haven, CT 06510
           Telephone: (860) 522-8888
           Fax: (860) 218-9555
           dmckenna@hayberlawfirm.com
           tdurkin@hayberlawfirm.com

## <u>CERTIFICATION</u>

I hereby certify that on June 9, 2021 a copy of the **Plaintiff's Amended Jury Instructions** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


By:  _/s/ **Thomas J. Durkin**_
       Thomas J. Durkin