**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| PATRICIA BLACK, ASHLEY PLATT, AND SHAWN DANIELSON, *Plaintiffs*, | |
| v. | No. 3:18-cv-02101 (JAM) |
| NEW ENGLAND COMPUTER SERVICES, INC. AND CHRIS ANATRA, *Defendants*. | |

# JURY INSTRUCTIONS

1

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................3

SECTION I. GENERAL INSTRUCTIONS ..........................................3

    Role of Judge and Court ............................................................3

    Standard and Burden of Proof ...................................................4

SECTION II. LIABILITY ..........................................................................6

    COUNTS 1 AND 2 – EQUAL PAY ............................................6

    COUNTS 3 AND 4 – UNLAWFUL DISCRIMINATION ............11

    COUNTS 5, 6, AND 7 - DEFAMATION ...................................13

    COUNTS 8, 9, AND 10 – RETALIATION .................................16

SECTION III. DAMAGES .......................................................................20

SECTION IV. INSTRUCTIONS FOR DELIBERATIONS .............28

    Forms of Evidence ....................................................................28

    Witness Credibility—General ..................................................28

    Closing Arguments ...................................................................30

    Lawyers' Arguments Are Not Evidence ...................................30

CONCLUSION ..........................................................................................30

# INTRODUCTION

Members of the jury, you now have heard all of the evidence. At this point, I will instruct you about the law that applies to this case. You may follow along as I read these instructions aloud, and please feel free to write on these copies—you will be permitted to take them into the jury room with you.

My instructions will be in three parts. First, I will discuss general rules concerning the role of the Court and the duty of the jury. Second, I will go over the issues in this case and set out the specific questions of fact that you must answer based on the evidence at trial. Third, I will give you some rules and guidelines for your deliberations.

Before we begin, please look at the other document that has been given to you—namely, the verdict form. After I have given these instructions and you hear the closing arguments of counsel, you will go back into the jury room to deliberate. When you are done deliberating, you will use the verdict form to report your verdict to the Court and the parties.

## SECTION I. GENERAL INSTRUCTIONS

### Role of Judge and Court

As a judge, I perform basically two functions during the trial. First, I decide what evidence you may consider, as you've seen me do throughout the trial.

Second, I instruct you on the law that you are to apply to the facts in this case. If any of the lawyers happen to state the law in their closing arguments differently from the way I am explaining it to you now, you must follow my instructions.

## Standard and Burden of Proof

The governing standard of proof in this case is the preponderance-of-the-evidence standard. To establish a fact by a preponderance of the evidence, a party must prove that the fact is more likely true than not true. If a party who bears the burden of proof proves a fact to be more likely true than not true, then that is enough to have proven the fact by a preponderance of the evidence. Because this case is a civil case and not a criminal case, there is no obligation on any party to satisfy a higher standard of proof such as the beyond-a-reasonable-doubt standard that applies only in criminal cases.

In determining whether a fact or claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them, as well as the parties' stipulations or agreements and admissions about what facts are true. A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented. And whenever I say in these instructions that a party must prove something to be true, what I mean

4

is that the party must prove it by a preponderance of the evidence.

## Separate Consideration of Each Party

There are three plaintiffs in this case: Patricia Black, Ashley Platt, and Shawn Danielson. And there are two defendants in this case: New England Computer Services Inc. ("NECS") and Chris Anatra. You will be asked to individually consider the claims of each one of the plaintiffs against each one of the defendants. You must take care to give separate consideration to each plaintiff and each defendant in this case. When I refer later in these instructions collectively to what "the plaintiffs" or "the defendants" must prove, what I mean is that each individual plaintiff or defendant must prove the fact at issue in order to sustain a plaintiff's claim or a defendant's defense.

The defendant NECS is a corporation. NECS may be held liable for the actions of any of its officers, director, and employees for actions taken within the scope of their employment for NECS. To the extent that you are asked to consider whether NECS acted with knowledge or with intent, you may consider the actions of and knowledge or intent of any of NECS's managerial officers, directors, and employees including Chris Anatra, Nichole Zingarella, and Cyndy Edwards.

I will now discuss the issues in this case. But before I do that, I will caution you that it is important to distinguish between what the law calls "liability" and

what the law calls "damages." When I use the word "liability," I am referring to whether a defendant has violated a plaintiff's legal rights, as distinct from whether this violation of the plaintiff's rights should result in an award of money damages. Of course, a defendant is under no obligation to pay a plaintiff damages unless the defendant has been found liable to the plaintiff in the first place, so you must consider the issue of liability before considering any issue of damages.

## SECTION II. LIABILITY

This action involves 10 claims or "counts" of alleged liability by one or more of the plaintiffs against one or more of the defendants. Because you will need to consider each count separately, the instructions below will proceed on a count-by-count basis. For each one of the counts, the instructions will explain what facts or "elements" must be proven in order for one or both of the defendants to be liable for that count.

### COUNTS 1 AND 2 – EQUAL PAY

Count One alleges that the defendants violated the rights of the plaintiffs under a federal law known as the Equal Pay Act. Congress passed the Equal Pay Act in order to legislate out of existence an outmoded societal view that a man should be paid more than a woman for the same work. The Act requires that employers must pay their employees equal wages for equal work regardless of the

sex or gender of the employee. A plaintiff need not prove discriminatory intent in order to prove a claim under the Equal Pay Act.

Count Two alleges that the defendant violated the rights of the plaintiffs under a State of Connecticut law that imposes the same obligations as the federal law for purposes of this case. Therefore, you may consider the plaintiffs' claims under both the federal and state law using the same standards set forth below.

In order to establish liability under the federal and state Equal Pay Acts, the plaintiffs bear the burden to prove the following five elements:

(1) that the defendants were their employers;

(2) that the plaintiffs were of a different sex or gender than Chris Londa;

(3) that the defendants paid Chris Londa more in wages than the plaintiffs;

(4) that the plaintiffs and Chris Londa had jobs requiring substantially equal skill, effort, and responsibility; and

(5) that the plaintiffs and Chris Londa performed their jobs under similar working conditions.

### Element One – Employer Status

The first element requires the plaintiffs to prove that the defendants were their employers. Because the parties agree that both defendants were the plaintiffs' employers, you should conclude that the plaintiffs have proven this first element of their claim.

### *Element Two – Different Sex/Gender*

The second element requires the plaintiffs to prove that they are of a different sex or gender than Chris Londa. Because the parties agree that the plaintiffs are of a different sex or gender than Chris Londa, you should conclude that the plaintiffs have proven this second element of their claim.

### *Element Three – Unequal Pay*

The third element requires the plaintiffs to prove that the defendants paid Chris Londa more in wages than they paid the plaintiffs during the time that Chris Londa and the respective plaintiffs were both employed by the defendants. You may consider wages and any other form of compensation actually paid by the defendants to Chris Londa and to the plaintiffs.

### *Element Four – Equal Skill, Effort, and Responsibility*

The fourth element requires the plaintiffs to prove that they and Chris Londa were employed in jobs that required substantially equal skill, effort, and responsibility. The term "skill" refers to the performance requirements of the job in terms of experience, training, education, and ability. The term "effort" refers to the amount of mental or physical exertion needed for the performance of a job. The term "responsibility" refers to the degree of accountability expected by the employer for each of the jobs, as well as the amount of preparation required to perform the job duties. The plaintiffs must prove all three of these requirements—

substantially equal skill, substantially equal effort, and substantially equal responsibility.

It is not necessary that the jobs at issue be identical in every respect. The critical issue is whether they are substantially the same in terms of what they require for skill, effort, and responsibility. Insignificant, insubstantial, or trivial differences do not matter and may be disregarded. Formal job titles may be relevant to your consideration but the title is not controlling.  It is the actual work or performance requirements of the jobs that is most important to consider.

### *Element Five – Similar Working Conditions*

The fifth element requires the plaintiffs to prove that the jobs were performed under similar working conditions. Because the parties agree that the jobs performed by the plaintiffs and by Chris Londa were performed under similar working conditions, you should conclude that the plaintiffs have proven this fifth element of their claim.

The plaintiffs bear the burden to prove each and every one of the five elements outlined above. If you conclude that they have not proven any one of the elements, then you must return a verdict in the defendants' favor with respect to the plaintiffs' claims under the federal and state Equal Pay Acts. On the other hand, if you conclude that the plaintiffs have proven all five elements, then you must consider the defendants' affirmative defense as explained below.

### *Affirmative Defense – Differential Based on Factor Other Than Sex*

Even if the plaintiffs have proven all five elements above, the defendants may not be liable under the federal and state Equal Pay Acts if they can carry their burden to prove that the higher wages or other compensation paid to Chris Londa as compared to the plaintiffs was based on any factor or reason other than the sex or gender of the plaintiffs. In order to establish this affirmative defense, the defendants must prove (a) that this factor is not a pretext but that they actually relied on this factor, (b) that this factor does not relate to sex or gender, and (c) that this factor was job-related and served a legitimate business purpose consistent with business necessity. Only if the defendants prove all of these requirements may you conclude that the defendants have carried their burden to prove their affirmative defense.

If you conclude that the defendants have carried their burden to prove their affirmative defense, then you must return a verdict in the defendants' favor with respect to the plaintiffs' claims under the federal and state Equal Pay Acts. On the other hand, if you conclude that the plaintiffs have proven all five elements and that the defendants have not proven their affirmative defense, then you must return a verdict in the plaintiffs' favor for their claims under Counts 1 and 2 under the federal and state Equal Pay Acts, and you must then turn to consider (as discussed later in these instructions) the issue of whether to award damages to the plaintiffs

for these two claims.

## COUNTS 3 AND 4 – UNLAWFUL DISCRIMINATION

Counts 3 and 4 allege that NECS engaged in unlawful discrimination against the plaintiffs on the basis of their sex. Count 3 arises under a federal law known as Title VII of the Civil Rights Act of 1964, and Count 4 arises under a very similar state law known as the Connecticut Fair Employment Practices Act. Because both these laws impose the same obligation on NECS for purposes of this case, you may consider plaintiffs' claims under both laws using the same standards as set forth below. Please note that these two claims are alleged only against NECS and not Mr. Anatra.

In order to establish liability for their claims under Counts 3 and 4, the plaintiffs must prove the following four elements:

(1) that NECS was their employer;

(2) that they were qualified for the positions they held at NECS;

(3) that they were subject to an adverse action by NECS; and

(4) that a motivating factor for the adverse action by NECS was the plaintiff's sex or gender;

### Element One – Employer Status

The first element requires the plaintiffs to prove that NECS was their employer. Because the parties agree that NECS employed the plaintiffs, you should

conclude that the plaintiffs have proven this first element of their claim.

### Element Two – Qualification for Employment Position

The second element requires the plaintiffs to prove that they were qualified to perform the basic functions of the positions that they held at NECS. This means simply that they were capable of performing the duties of their position as distinct from whether they actually were effective in performing their positions. Because the parties agree that the plaintiffs were qualified to perform their positions at NECS, you should conclude that the plaintiffs have proven this second element of their claim.

### Element Three – Adverse Action

The third element requires the plaintiffs to prove that they were subject to an adverse action. Here, the plaintiffs allege that the adverse action was that NECS paid them less than a male employee, Chris Londa.

### Element Four – Motivating Factor Based on Sex/Gender

The fourth element requires that the plaintiff prove that a motivating factor for NECS's adverse action of paying them less than Chris Londa was NECS's consideration of the plaintiffs' sex or gender. A "motivating factor" is a factor that made a difference in a defendant's decision to subject a plaintiff to an adverse action. The plaintiffs need not prove that their sex or gender was the sole or principal reason for the decision to pay them less in compensation. It is enough if

they prove that NECS's consideration of their sex or gender was a factor that played a part in or made a difference to NECS's decision to pay them less than Chris Londa.

If you conclude that the plaintiffs have proven all four elements of their claims, then you must return a verdict in the plaintiffs' favor for their claims under Counts 3 and 4, and you must then turn to consider (as discussed later in these instructions) the issue of whether to award damages to the plaintiffs for these two claims. On the other hand, if you conclude that the plaintiffs have not proven all four elements of their claims, then you must return a verdict in favor of NECS on these two claims and without an award of damages for these two claims.

### COUNTS 5, 6, AND 7 - DEFAMATION

The plaintiffs allege in Counts 5, 6, and 7 that Mr. Anatra defamed each one of them during the summer of 2018. The plaintiffs claim that Mr. Anatra called them liars and made other allegedly defamatory statements.

Count 5 alleges defamation by Mr. Anatra against Ms. Black. Count 6 alleges defamation by Mr. Anatra against Ms. Platt. And Count 7 alleges defamation by Mr. Anatra against Ms. Danielson. All three of these counts allege liability against both Mr. Anatra personally and against NECS.

The elements for each one of these counts are the same. To prevail on their claims for defamation, the plaintiffs must prove the following:

13

(1) that Mr. Anatra published a statement about a particular plaintiff to a third person;

(2) that the statement was defamatory in nature; and

(3) that the particular plaintiff's reputation suffered injury as a result of the statement.

### Element One – Publication of a Statement

The first element for each one of the plaintiffs' defamation claims requires the particular plaintiff (*e.g.*, Ms. Black for Count 5) to prove that Mr. Anatra published a particular statement about the particular plaintiff to a third person. An oral statement is "published" if it is intentionally made by one person to a third person (*i.e.*, any person other than the speaker himself and the person who is the subject of the alleged defamatory statement).

Of course, Mr. Anatra cannot be held liable for any statements that the plaintiffs have not proven he actually made. Moreover, you must take care to identify a particular statement made about the particular plaintiff. The words of the statement must be identified with reasonable particularity, and it is not enough to conclude simply that there was general talk or conversation about a subject unless you identify a specific statement published by Mr. Anatra that identified a particular plaintiff.

### Element Two – Defamatory Nature of Statement

The second element requires the plaintiffs to prove that the particular

statement that was published by Mr. Anatra was defamatory. A defamatory statement is a false communication of fact that tends to harm the reputation of another; to diminish the esteem, respect, goodwill, or confidence in which the plaintiff is held; to deter third persons from associating or dealing with her; or to excite adverse, derogatory, or unpleasant feelings or opinions against her.

A statement is not defamatory merely because it is unpleasant or offends the person about whom a statement has been made. Nor is a statement defamatory if it does not constitute a false assertion of objective fact rather than a mere assertion of an opinion. Statements of opinion are not defamatory no matter how offensive or insulting they are.

To decide whether any particular statement is defamatory, you should consider (a) the context and circumstances, (b) the particular word or words used, and (c) whether the statement is objectively capable of being proved false. Of course, an opinion is not objectively capable of being proved false. The words of any particular statement should be given their ordinary meaning, which is the same meaning that people of common and reasonable understanding would give to them in the context and under all the circumstances that were present at the time the statement was made.

### Element Three – Injury to Reputation

The third element requires the plaintiffs to prove that their reputations

suffered injury as a result of Mr. Anatra's publication of the defamatory statement. Among the statements that the plaintiffs allege that Mr. Anatra made was that he called them liars. If you conclude that Mr. Anatra called the plaintiffs liars and that in doing so he was making a false statement of objective fact (rather than opinion), then the plaintiffs do not need to show that their reputations were actually injured by such statement. In such circumstances involving a false factual allegation that someone has lied, the law presumes the statement to be defamatory.

If you conclude that the plaintiffs have proven all three elements, then you must return a verdict in the particular plaintiff's favor for the claims under Counts 5, 6, and 7, and you must then turn to consider (as discussed later in these instructions) the issue of whether to award damages to the plaintiffs for these. On the other hand, if for any one of the counts you conclude that the plaintiffs have not proven all three elements, then you must return a verdict in favor of the defendants and without an award of damages for any of those counts.

### COUNTS 8, 9, AND 10 – RETALIATION

Counts 8, 9, and 10 allege claims for unlawful retaliation under the Connecticut Fair Employment Practices Act (Count 8), under the federal Civil Rights Act of 1964 (Count 9), and under the federal Equal Pay Act (Count 10). All three of these claims are brought by Ms. Danielson only and not by the other two plaintiffs.  The first two of these claims (Counts 8 and 9) are brought against only

NECS as the defendant, and the third of these claims (Count 10) is brought against both NECS and Mr. Anatra.

Although these claims are brought under three different statutes, the statutes share a common purpose. They prohibit a defendant employer from retaliating against a plaintiff employee merely because of the plaintiff employee's good faith complaint alleging that the defendant employer has engaged in discrimination or some other violation of these statutes.

Except as I will explain below, the elements of a retaliation claim under these three statutes are the same. Ms. Danielson must prove each one of the following three elements by a preponderance of the evidence:

(1) that Ms. Danielson or Ms. Black or Ms. Platt took part in a protected activity of complaining about wage discrimination;

(2) that the defendants took an adverse action against Ms. Danielson; and

(3) that the defendants took this adverse action because of the protected activity engaged in by Ms. Danielson, Ms. Black, or Ms. Platt.

### *Element One—Participation in Protected Activity*

The first element requires Ms. Danielson to prove that she, Ms. Black, or Ms. Platt took part in protected activity. A person engages in "protected activity" if she takes some act to oppose an employment act or practice that she reasonably and in good faith believes is discriminatory, such as by filing a formal complaint of discrimination with a court or with an administrative agency or even by making an

informal discrimination complaint to the employer. It is possible for there to be more than one act of protected activity.

### Element Two - Adverse Action

The second element requires Ms. Danielson to prove that the defendants subjected her to an adverse action. An employer engages in an "adverse action" if the employer takes an action that is sufficiently adverse to the plaintiff that it would dissuade or discourage a reasonable person from engaging in the protected activity at issue if they knew that the adverse action would result. Thus, not every unfavorable action that an employer may engage in as to an employee qualifies as an adverse action.

To the extent that the protected activity at issue is Ms. Danielson's own complaint about discrimination, then you should consider whether any action at issue would be enough to dissuade or discourage a reasonable person from engaging in the protected activity at issue. To the extent that the protected activity at issue is a complaint by Ms. Black or by Ms. Platt, then you should consider whether the relationship between Ms. Danielson and Ms. Black or Ms. Platt is such that engaging in retaliation against Ms. Danielson would dissuade or discourage a reasonable person in the circumstances of Ms. Black or Ms. Platt from engaging in the protected activity at issue. It is possible for there to be more than one adverse action. And it is for you to decide whether any discipline or the termination of Ms.

Danielson's employment qualifies as an adverse action.

### *Element Three - Causal Relationship*

The third element requires Ms. Danielson to prove that the defendants engaged in an adverse action because of protected activity. In this manner, Ms. Danielson must prove that there was a causal relationship between the adverse action and the protected activity.

For purposes of her retaliation claim under the Connecticut Fair Employment Practice Act (Count 8), Ms. Danielson must prove that the protected activity was a motivating factor in NECS's decision to terminate her employment. Consistent with what I have previously said in these instructions, a "motivating factor" is a factor that made a difference in a defendant's decision (here, the decision to engage in an adverse action) even if there were other factors that also motivated or contributed to the decision.

For purposes of her retaliation claims under Title VII (Count 9) and the Equal Pay Act (Count 10), there is a different standard of proof with respect to the causal relationship. For these two counts, you must consider whether the defendants would not have engaged in the adverse action but for the fact of the protected activity. If you conclude that the defendants would still have engaged in the adverse action regardless of any protected activity, then Ms. Danielson has not proved the required causal relationship for purposes of Counts 9 and 10.

If you conclude that Ms. Danielson has proven all three elements for her retaliation claims, then you must return a verdict in her favor under Counts 8, 9, and 10, and you must then turn to consider (as discussed later in these instructions) the issue of whether to award damages to Ms. Danielson for unlawful retaliation. On the other hand, if for any one of the counts you conclude that Ms. Danielson has not proven all three elements, then you must return a verdict in favor of the defendants and without an award damages for any of those counts alleging retaliation.

This concludes my instructions with respect to the issues of liability in this case. Please keep in mind that the role of a trial jury is not to serve as a "super" personnel department to second-guess an employer's discretionary judgments about how to treat its employees. Your role is not to render a general judgment about whether the defendants have treated the plaintiffs fairly or unfairly. Your focus must be on whether the evidence satisfies the specific elements that I have outlined above for liability to be imposed for any of the plaintiffs' claims.

## SECTION III. DAMAGES

If—and only if—you conclude that the plaintiffs have proven at least one of their claims against defendants by a preponderance of the evidence, then you must determine the damages, if any, that the plaintiffs should receive. You should not interpret the fact that I am providing you with instructions here about how to

consider and calculate damages as an indication that I believe that the plaintiffs have or have not proven their claims for liability against either of the defendants.

There are several categories or types of damages that you should consider. They include what I will describe below.

### Damages for Violations of Equal Pay Act Claims

If you conclude that the defendants have violated the Equal Pay Act (Counts 1 and 2), then you should award damages in the amount of the wages or other compensation that the plaintiffs should have received if they had been paid the same amount as Chris Londa. If you have found that both NECS and Mr. Anatra are liable for failure of equal pay, the award you enter will be entered against both NECS and Mr. Anatra with joint and several liability for the amount due to each plaintiff. In addition, if you have found that the defendants have violated the state Equal Pay Act (Count 2), you may also award additional damages as described below for that violation.

### Damages for State Equal Pay Act, Discrimination, Defamation, and Retaliation Claims

If you conclude that the defendants engaged in a violation of the state Equal Pay Act (Count 2), unlawful discrimination (Counts 3 and 4), defamation (Counts 5, 6, and 7), and/or unlawful retaliation (Counts 8, 9, and 10), then you should consider whether to award compensatory damages and punitive damages as I will instruct you below.

Let's start with compensatory damages. The purpose of an award of compensatory damages is to compensate an injured plaintiff for the injuries that were proximately caused by a defendant's unlawful conduct. The purpose of compensatory damages is not to punish a defendant. Instead, the purpose of compensatory damages is to compensate or to "make whole" a plaintiff for a loss that has been caused by a defendant as best as an award of money damages is capable of doing so.

Just as the plaintiffs bear the burden to prove that one or both of the defendants should be liable to them for damages, they also bear the burden to prove the amount of damages for which the defendants should be liable. In other words, the plaintiffs bear the burden to prove by a preponderance of the evidence that the defendants' unlawful conduct was a proximate cause of each and every kind and amount of damages for which you may decide to award damages. An act is a proximate cause if it was a substantial factor in bringing about a plaintiff's injury, and if the injury was a reasonably foreseeable consequence of the act. To the extent that any of the plaintiffs' claims for compensatory damages are for harm or loss that they have not proved was caused by the defendants' unlawful conduct, then you may not award compensatory damages for that harm or loss.

The award of compensatory damages may include damages both for economic loss and non-economic loss. The term "economic loss" refers to losses

suffered by the plaintiffs that can be mathematically quantified (such as loss of wages or backpay) if the damages were proximately caused by the defendants' unlawful conduct. The term "non-economic loss" refers to harms proximately caused by unlawful conduct that is not economic or monetary in nature. Such non-economic losses may include the following kinds of losses: emotional distress and suffering, humiliation, personal indignity, fear, anxiety, and anguish solely to the extent that such harm was the result of the alleged unlawful conduct.

Economic and non-economic damages may be awarded only if the plaintiffs prove the amounts that should be awarded. Once a plaintiff has proved the nature and extent of her compensable injuries and losses, it becomes your job to determine what is fair, just, and reasonable compensation for those injuries and losses. There is often no mathematical formula in making this determination but you should not engage in speculation or guesswork. Instead, you must use human experience and apply sound common sense in determining the amount of any damages you choose to award.

To the extent that Ms. Danielson claims that she was terminated from her employment because of unlawful retaliation, she has a duty to mitigate her damages from loss of employment by seeking new employment. The defendants bear the burden to prove that Ms. Danielson did not mitigate her damages. You have discretion to deduct from any award to Ms. Danielson the value of any

unemployment benefits she received if you believe a deduction is appropriate.

When deciding on an amount of compensatory damages, you must take care not to award damages that are any greater than what the plaintiffs have proved to be the total amount of their losses. Compensatory damages are not intended to give a plaintiff a windfall benefit for amounts beyond what the plaintiff has actually lost. To the extent that you might conclude that any measure of one kind of damages may overlap with a measure for another kind of damages, you should not award damages for the same loss or harm twice. For example, if you have awarded damages for any of the plaintiffs under the Equal Pay Act of the wage differential between them and Chris Londa, you should not award the same wage differential as a part of the damages for the plaintiffs' discrimination claims.

As I have noted above, some of the individual liability counts in this case involve statutes that impose substantially the same standard for liability. Even if you conclude that the defendants have violated two or more laws that prohibit the same conduct, you still may not award compensatory damages to any plaintiff that is greater than the total harm that the plaintiff actually suffered regardless of how many laws may have been violated that caused the same harm.

You will see on the verdict form a series of questions of whether each of the plaintiffs have proven by a preponderance of the evidence that they are entitled to an award of compensatory damages for their discrimination and retaliation claims.

If you answer "Yes" to those questions, then you should state the amount of any economic damages and non-economic damages that they have proven for that claim and for each plaintiff, and these two amounts when added together will equal the total compensatory damages that the Court shall award to each plaintiff.

In the event that you have determined that both NECS and Mr. Anatra should be liable for any of the counts and if you enter an award of damages for that count, the Court will enter judgment against both of the defendants subject to joint and several liability.

## Punitive Damages

If you find that the defendants are liable for any violations of the state Equal Pay Act, for Title VII of the Civil Rights Act, for the Connecticut Fair Employment Practices Act, and/or for defamation, then you may award punitive damages in addition to compensatory damages under the standards I will describe below. In contrast to an award of compensatory damages, punitive damages are not awarded to compensate a plaintiff for an injury but to punish a defendant for extreme or outrageous conduct, and to deter or prevent a defendant and others like it from committing such conduct in the future.

Your first consideration must be whether the plaintiffs have proven the baseline facts of what is required to allow for an award of punitive damages. Such damages may be awarded only if you find that the acts or omissions of the

defendants reveal a reckless indifference to the rights of the plaintiffs, maliciousness, or an intentional and wanton violation of those rights. An act or omission is malicious if it is prompted by ill will or spite towards the plaintiffs. An act or omission is wanton if done in a reckless or callous disregard of, or indifference to, the rights of the plaintiffs. The plaintiffs have the burden to prove that the defendants acted maliciously, wantonly, or recklessly with regard to their rights.

Even if you find that the plaintiffs have made the required showing of the baseline facts that would allow for an award of punitive damages, an award of punitive damages is discretionary. That is, if you find that the baseline requirements for punitive damages are satisfied, then you may decide in your discretion whether to award punitive damages or not to award them.

In exercising your discretion, you should consider the underlying purpose of punitive damages: to punish a defendant for outrageous conduct or to deter the defendant and others from performing similar conduct in the future. Thus, in deciding whether to award punitive damages and the amount of that punitive damages award, you should consider whether the defendants may be adequately punished by a compensatory damages award, or whether the conduct is so extreme and outrageous that compensatory damages are inadequate to punish the defendants' wrongful conduct. You should also consider whether the damages

award is likely to deter or prevent the defendants from again performing any such wrongful acts, or whether punitive damages are necessary to provide deterrence. Finally, you should consider whether punitive damages are likely to deter or prevent other persons from performing wrongful acts similar to those that the defendants may have committed.

You should not award an amount for punitive damages that is more than necessary to serve these purposes of a punitive damages award. If you award punitive damages for more than one count, you should consider whether the amount you award for the second count is cumulatively more than what is appropriate to serve the purposes of a punitive damages award.

You will see on the verdict form that there are spaces for you to enter an amount of punitive damages that you may believe to be appropriate. The one exception is for any punitive damages for the defamation counts (Counts 5, 6, and 7). For these counts, the law allows for punitive damages only in the amount of the plaintiffs' attorneys fees and costs for the litigation of those claims. Therefore, for those counts, you are asked only whether the Court should award this amount rather than for you to state a numerical amount that you believe appropriate.

In the event that you have determined that both NECS and Mr. Anatra should be liable for any of the counts and if you enter an award of punitive damages for that count, the Court will enter judgment against both of the

defendants subject to joint and several liability.

## SECTION IV. INSTRUCTIONS FOR DELIBERATIONS

### Forms of Evidence

As I advised you at the beginning of this trial, the only evidence in this case is the evidence that was presented by means of witness testimony (including video deposition testimony) as well as documentary evidence, photographs, and physical exhibits. As to any fact to which the parties have admitted or stipulated, either in writing or orally during the course of this trial, you should treat that fact as proven without the need for further evidence. The lawyers' questions, statements, and arguments are not evidence.

Now there are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of a witness about what the witness saw or heard or did. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist, even though there was no direct proof of those other facts. It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict must be based on a preponderance of all of the evidence presented.

### Witness Credibility—General

You have had the opportunity to observe all of the witnesses. It is now your

28

job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

How do you determine truthfulness? You base it on what you have seen and heard. You watched the witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Was he or she frank, forthright, and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his or her demeanor—that is, his or her behavior, manner, and appearance—while testifying? Often it is not what a person says but how he or she says it that convinces us.

You should use all the tests for truthfulness that you would use in determining matters of credibility in your everyday lives. You should consider any bias or hostility the witness may have shown for or against any party, as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of the witness's memory, candor or lack of candor, intelligence, the reasonableness and probability of the witness's testimony, its consistency or lack of consistency, and its corroboration or lack of corroboration with other credible testimony.

**Closing Arguments**

At this point we will interrupt the instructions to hear closing arguments of counsel. I will conclude the instructions after those summations.

**[BREAK FOR CLOSING ARGUMENTS]**

**Lawyers' Arguments Are Not Evidence**

You have just heard closing arguments of counsel. I want to remind you that what the lawyers have said is not evidence. The lawyers merely presented their arguments about what they contend that the evidence has shown. Their credibility is not an issue that should enter into your decision in this case.

In closing argument, counsel may have mentioned some formulas or amounts that might figure into your verdict. I caution you that such formulas or amounts suggested by counsel do not constitute evidence. If you conclude that one or both of the defendants are liable, it is up to you to decide what damages are fair, just, and reasonable regardless of amounts that may have been suggested by counsel in argument.

**CONCLUSION**

When you return to the jury room, you should first elect one person to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court. Your verdict must be unanimous for each of the

findings indicated on the jury verdict form given to you. Until a verdict is agreed to by each juror, it is not a unanimous verdict.

Your verdict should represent the considered judgment of each juror. Each of you must make your own decision, but you must consider impartially all of the evidence and the views of your fellow jurors. It is your duty to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so consistent with the individual judgment of each juror.

In the course of your discussion, do not hesitate to re-examine your own individual views, or to change your opinions, if the deliberations and the views of your fellow jurors convince you to do so. But you should not surrender your honest convictions about the facts or about the weight or effect of the evidence solely because of the opinion of your fellow jurors or merely to bring an end to deliberations.

Your verdict of course must be based solely upon the evidence developed at this trial, or the lack of evidence. Please bear in mind that all litigants are equal before the law. You should not, therefore, consider any personal feelings you may have about the race, religion, nationality, national origin, sex, sexual orientation, gender identity, age, wealth, lifestyle, or other features of the parties.

When you have reached unanimous agreement as to your verdict, you will

have your foreperson fill in your answers, date, and sign the verdict form. Then inform the court security officer or clerk that you have reached a verdict. The terms used in the verdict form are discussed here in these instructions, and these instructions must govern your deliberations.

When you go into the jury room to begin your deliberations, you will have exhibits with you shortly, but you will not have a transcript of the testimony. If you want any of the testimony read to you, that can be done and will occur in open court. Reading the testimony is a time-consuming process, so please be as specific as possible if and when you decide to request a reading of portions of the testimony.

Requests that testimony be read back, as well as any other communication with the court, should be made in writing, signed by your foreperson, and given to the courtroom deputy or a marshal. I will respond to your request as promptly as possible either in writing or by having you return to the courtroom so that I can address you orally.

It is proper to add a final caution: nothing that I have said in these instructions—and nothing that I have said or done during the trial—has been said or done to suggest to you what I think your verdict should be. What the verdict shall be is *your* exclusive duty and responsibility.

Now please proceed to your deliberations in the jury room. Deliberate only when all of you are present. No deliberations may take place without all jurors being present. If you bring your cell phones into the jury room, you must deactivate them during deliberations. You must not research any fact or legal issue nor communicate with each other or with anyone about the case through the internet, e-mail, texting, etc. Further, if at any time a juror departs the jury room to use the facilities or needs to access a cell phone for a personal reason, the other jurors must immediately cease deliberations and may not recommence deliberations until all jurors are present and all cell phones are put away.

As you deliberate, determine the facts on the basis of the evidence as you have heard it and apply the law as I have outlined it for you. Render your verdict fairly, uprightly, and without any prejudice. Take as long as you think is necessary to fairly and impartially reach your verdict. Thank you for your attention.

Dated at New Haven this 17th day of June 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge